No. 24,943.

Lloyd Abner Weinhold et al., Minors, by Ethel D. Weinhold, Next Friend, *Appellants,* v. Samuel Weinhold et al., etc., *Appellees.*

SYLLABUS BY THE COURT.

1. Contracts — *Negotiations for Sale of Land — Contracts Made But Never Delivered—Specific Performance Not Enforceable.* Parties negotiated for a sale of land, the terms of which were committed to a writing which was signed by them and which provided that an advance payment of money of the consideration should be made. The seller retained the writing in his possession until the buyer should make the advance payment, it being the intention of the parties that the writing should not be delivered until the buyer had made the required payment. No payment was made before the death of the buyer. The writing, it is held, did not ripen into a contract which the representatives or heirs of the deceased could specifically enforce.

2. Same—*Not a Completed Contract.* Where parties who bargain for a sale of land intend that a written agreement of the terms of sale shall not be delivered or become binding, while an essential thing to close the transaction remains to be done, the writing cannot be regarded as a completed contract until that thing is done.

3. Same—*Evidence Upholds Findings and Judgment.* The evidence examined and held to be sufficient to uphold the findings and judgment of the trial court.

Appeal from Ellsworth district court; Dallas Grover, judge. Opinion filed February 9, 1924. Affirmed.

*Ira E. Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellants.

*C. W. Burch, B. I. Litowich, La Rue Royce,* all of Salina, and *Samuel E. Bartlett,* of Ellsworth, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal involves the right to specific performance of an alleged contract for the sale of land. Samuel Weinhold, an elderly widower, who had six living children and owned separate farms, some of which he had sold, decided that he would sell each of his three sons, Arthur, Charles and Merl, a quarter section of land. He entered into negotiations with them and arranged to sell each a tract on certain terms. Each of them indicated the quarter section that he desired to purchase and the one selected by Merl was sold to him. Later Charles and Arthur each orally agreed with their father that they would purchase two of the tracts, selecting the ones they desired to purchase. The tract selected by Charles was priced at $8,000, and Arthur arranged to take the one selected by him, at the price of $5,000. A scrivener prepared written contracts which were signed by the parties, and the contract recited the terms of payment. Each provided for a cash payment, and that of Arthur, the only one involved here, contained the provision that he was to pay:

"The sum of $5,000 in manner following: $500 cash in hand paid, the receipt of which is hereby acknowledged, and the sum of $4,500 to be paid on or before ten years with interest from May 15th, 1919, with interest at the rate of five per cent per annum, payable annually on the whole sum remaining from time to time unpaid."

Charles made the cash payment agreed upon and a copy of the agreement was delivered to him as evidence of a completion of the sale. Arthur was unable to make the cash payment and his father retained the original and copy of the agreement, placed them in a box at his home in which he kept his papers awaiting the payment of the $500. About a month afterwards, while in Colorado, Arthur contracted influenza, which caused his death. Shortly afterwards the contract which had been prepared but never delivered was taken by the father to an officer of the bank of Wilson, and was destroyed by him under the direction of Samuel Weinhold. Later the tract was sold to R. S. Weinhold for a consideration of $6,000. A controversy subsequently arose between Ethel D. Weinhold, the widow of Arthur, as to whether there was a completed contract between Arthur and his father and as to whether the cash payment provided for in the contract had been made or arranged for to the satisfaction of both parties.

Much testimony was taken relating to the questions involved which was submitted to a jury called to aid the court, but its findings were set aside and the court then made its own findings including the following:

"The said Charles having made the payment of $500 mentioned in the instrument of writing signed by himself and said Samuel Weinhold, a copy of said instrument was delivered to him by said Samuel Weinhold, the other copy being retained by said Samuel Weinhold. Later, both copies were left with the scrivener, F. S. Percival, at the Wilson State Bank. Said Arthur not being able to pay the $500 mentioned in the instrument signed by himself, and not being able to pay any part of said sum of $500, no copy of said instrument in writing was delivered to him, but the said Samuel Weinhold took both copies of said instrument with him, it being the intent and understanding of said Arthur and said Samuel Weinhold that the instrument in writing should not be delivered to said Arthur until the said sum of $500 was paid. Said Samuel Weinhold took both copies of the written instrument signed by himself and said Arthur to his home and placed them in a safety box where they were kept until they were removed by said Samuel Weinhold and taken to the Wilson State Bank and there destroyed as hereinafter stated. Other members of the family of said Samuel Weinhold, among them said Arthur, kept their valuable papers in said box or chest, and all had free access to the box."

Based on this finding the court concluded that as no part of the $500 mentioned in the written instrument had ever been paid and the instrument had never been delivered, and further that it was the understanding of Arthur and his father that the written instrument should not be delivered until the sum of $500 was paid, the court held that the plaintiffs were not entitled to judgment for specific performance.

The case turns largely on the evidence produced, much of which is in conflict. Negotiations for a sale of the land were had, the terms committed to writing and the question is was the contract completed so as to become effective between the parties. It was well established that a cash payment of $500 was required in order to close the contract and make it a binding obligation. It is equally clear that duplicate copies of the proposed agreement which had been prepared were withheld by Samuel Weinhold because the advance payment had not been made by Arthur, and further that it was the understanding of both parties that there should be no delivery or completion of the contract until the $500 payment was made. It is contended that the advance payment was subsequently made by Arthur, or if not paid, that his father agreed to give him

time to make the payment, as soon as he disposed of some wheat which he held. Arthur had a quantity of wheat and probably intended to sell it and use the proceeds in payment of the $500 necessary to the completion of the contract for the sale of the land. Some evidence and circumstances were produced tending to show that at least partial payments had been made, but other testimony given upholds the finding of the court that payment was never made. There is testimony, too, that Arthur admitted while in Colorado, a few days before his death, that payment had not been made but that upon his return to Kansas he intended to market his wheat, pay the money and close the contract. Until the payment was made the contract negotiated was not complete. The memorandum made could not be binding upon the parties as a contract until it was completed by the stipulated payment. Neither can it be regarded as an option because no consideration was paid and no option period fixed. It was no more than an offer which could not grow into a contract until there was an acceptance in compliance with the terms of the offer. A contract relation between the parties was not established so long as something remained to be done to perfect an enforceable contract. When the parties bargaining intend that a memorandum shall not be binding, while an essential thing remains to be done to close the transaction, it cannot be regarded as a complete contract until that thing is done. (6 R. C. L. 616.) As has been said:

"The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete." (*Bitulithic Paving Co. v. Highland Park*, 164 Mich. 223, 228.)

The trial court having held on the evidence that the payment arranged for had not been made, it was warranted in holding that the contract did not become effective and therefore could not be specifically enforced. If Arthur had lived and had failed to close the contract by a compliance with the condition of the offer, his father could not have successfully insisted on specific performance. The death of Arthur ended the transaction and left nothing which his representatives or heirs could enforce. Much testimony was presented as to conversations had and statements made by the parties as to the transaction shortly after Arthur's death, which is said to have influenced the widow in not insisting on the carrying out of the proposed sale, but none of it approached the making of a new contract with the widow and children of Arthur. Some of it

Weinhold v. Weinhold.

went to the existence of the contract and of a proposed settlement of the controversy without litigation, but under the testimony and findings of the trial court it cannot be held that there was any recognition of the contract by the father.  The court found that the father had told Arthur's widow that while payment had not been made she could if she desired take the land at the stipulated price and she replied that she could not pay for and would not take it. It appeared that Arthur had insurance on his life, the amount of which was not known at the time by any of the parties.  As the insurance policies named his mother as the beneficiary, it was believed that the heirs of the mother were entitled to the insurance, and the court found that the defendant intended to give the widow a choice between the insurance and the land, and further that the remarks of the Weinholds led the widow to believe that she had not the means to pay the price of the land.  These statements and opinions, however, even if they can be regarded as intentionally misleading, and tended to induce the widow to make an unwise decision as to her future action, did not add to or affect the negotiations had with Arthur in his lifetime, nor did they furnish the elements necessary to make them a completed and enforceable contract for the sale of the land.  The contention that the findings of the court are not sustained by the evidence cannot be upheld. While there is considerable testimony tending to support the theory of the plaintiffs, there is evidence to the contrary, and the findings of the court on these controverted questions are conclusive on this appeal.

Judgment affirmed.

BURCH, J.:  Not sitting.