No. 28,264.

L. V. ORR, *Appellee,* v. OTTO MENG et al., *Appellants.*

(271 Pac. 292.)

.Opinion filed·
November 3, 1928.

*Charles C. Calkin,* of Kingman, for the appellants.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to recover a broker's commission for finding a purchaser for a quarter section of land owned and occupied by Otto Meng and Helena Meng, his wife. A trial resulted in a verdict and judgment in favor of the broker, L. V. Orr, and defendants, alleging errors, bring the case here for review.

It appears that plaintiff found a purchaser for the land able and willing to buy at the stipulated price. She reported her action to the defendants, and then prepared a contract of sale which was signed by the owners, in which, among other things, it was stated that a down payment of $1,000 should be made. Plaintiff then returned to complete the contract with Seifert, the purchaser, who stated that it was not convenient for him to pay more than $500 as an advance payment, but further stated that if defendants objected

the plaintiff might draw on him for the remaining $500; and plaintiff, knowing the defendants for whom she was acting had previously mentioned $500 as a sufficient down payment, changed the contract so as to provide for a $500 payment, and Seifert signed the contract, which plaintiff deposited in a bank. She tried to communicate with defendants, living some distance away, respecting the change and signing of the contract, and after some delay in reaching them she got in touch with Mrs. Meng, who said her husband was absent, but she would inform him when he returned, and added that she thought it would be all right. The next morning Mr. Meng appeared at plaintiff's office and said that he didn't like the change, and plaintiff replied that the other $500 would be put up immediately.

Seifert had stated that if the Mengs were not satisfied with the $500 that plaintiff might draw on him for the additional sum. Meng then stated that he and his wife had discussed the matter the evening before, and they had decided not to sell the farm. The additional $500 was put up, and the contract, signed by the defendants, was placed in a bank and subsequently placed of record. Considerable testimony was given respecting changes in the contract other than that mentioned, but there was in the testimony sufficient to show that no other substantial changes were made. The defendants refused to carry out the deal and also declined to pay the commission. The jury answered the following special questions that were submitted relating to the transaction:

"3. Did plaintiff procure and cause said George Seifert to become a prospective purchaser of said land to the extent of signing a written contract of purchase therefor? A. Yes.

"4. State what changes, if any, plaintiff made in the written contract signed by defendants on April 5, 1927, at their home. A. Changed $1,000 to $500.

"5. State whether or not plaintiff was authorized to make such changes by either one or both of said defendants. A. No.

"6. If you answer the above question in the negative, state what changes, if any, plaintiff made without the knowledge or consent of said defendants or either of them. A. Changed $1,000 to $500.

"7. Was the said George Seifert on April 5, 1927, and for several days thereafter, ready, willing and able to buy said land at the price and on the terms and conditions prescribed by said defendants at the time they signed said written contract? A. Eleven answers yes, and one answered not until the 6th.

"8. Did the defendants give said plaintiff a fair and reasonable opportunity to submit to said George Seifert the price, terms and conditions of sale prescribed by said defendants to said plaintiff after she learned that amount of down payment was unsatisfactory? A. No.

"9. Did plaintiff, at the time she made the changes, if any, in said contract after it was signed by said defendants, honestly believe that such changes were consented to and authorized by said defendants? A. No.

"10. Did plaintiff, at the time she secured the signature of George Seifert on or about the 5th day of April, 1927, know, or have reason to believe, or think that the said George Seifert would execute the contract in the form in which it was when the contract was signed by defendants and placed in the hands of plaintiff, if necessary, to purchase the property? A. Yes.

"11. Did plaintiff exercise her best efforts to induce the said George Seifert to execute the contract in the form in which it was when placed in the hands of plaintiff? A. Yes.

"12. Did defendants on or about April 5, 1927, place a certain written contract bearing their signature in the hands of plaintiff for the securing by her of the execution thereof by one George Seifert? A. Yes.

"13. Did the plaintiff change said contract and secure the signature of the said George Seifert to said contract after changing same? A. Yes.

"14. Did the plaintiff change the contract placed in her hands by defendants without the knowledge and consent of defendants and accept the signature of George Seifert thereto after changing same? A. Yes.

"15. If you find that plaintiff changed the contract from the form it was in when delivered to her and accepted the signature of George Seifert after same was changed, did said defendants after learning of said changes withdraw said property from the market? A. Yes.

"16. Did plaintiff have the full sum of $1,000 paid her by Seifert at the time of the discussion with defendant, Otto Meng, on April 6, 1927? A. No; but had authority to draw draft on Seifert for $500.

"17. If you find that plaintiff at the time had the full sum of $1,000, state whether she then advised the said Otto Meng of said fact. A. Yes; at the close of the second interview with Mr. Meng.

"19. Did plaintiff, upon learning that defendants desired to withdraw said real estate from the market, then seek to place said defendants in such position as to be required to sell and convey said real estate? A. Yes."

Question No. 7 with its answer was withdrawn and stricken out. On the verdict and answers to the other questions, judgment was rendered for plaintiff in the sum of $237.20.

Defendants first contend that the court erred in refusing the setting aside of the general verdict on the ground that the findings were inconsistent with it. Error is also assigned on the withdrawal of question No. 7 with the answer thereto and the failure to set aside finding No. 11.

They also complain of instructions given to the jury and of the refusal of some that were requested. As to the defendants' motion for judgment on the special findings, it must be held that the material findings support the judgment. It is conceded that defendants listed their farm with plaintiff and contracted with her that a

commission would be paid if she procured a purchaser. The evidence and findings show that she did procure a purchaser ready, able and willing to buy the farm on the terms prescribed by defendants. When she had accomplished that she had earned her commission.

Much is made of the fact that a change was made in the contract of sale between the owners and the purchaser which plaintiff had volunteered to prepare, but that occurred after the purchaser had been procured, who was ready to take the place on the terms fixed and after the liability of defendants to pay the commission had arisen. True, the purchaser had suggested that it would be inconvenient for him to make an advance payment of more than $500. There was a stipulation in the tentative contract prepared by plaintiff for an advance payment of $1,000. Plaintiff had learned that when the purchaser's son had looked at the farm, Mr. Meng had said that he would take a down payment of $500, and so plaintiff believing that it would be agreed to, changed the contract and substituted a payment of $500 instead of the $1,000. At once she undertook to phone defendants of the change and the signing of the contract by Seifert. She was unable to get in touch with them for some time, but after several calls did get Mrs. Meng on the phone. She reported to her what had been done and asked if it was agreeable to accept an advance payment of $500. Mrs. Meng replied in substance that she would tell her husband, but that she thought it would be all right. The purchaser had told plaintiff that if defendants were not satisfied with the forfeit payment of $500 he would send the other $500 to her the following morning. The full amount of $1,000 was advanced and placed in escrow in a bank on the following morning. That morning Meng appeared and objected to the change as to the advance payment. He was informed that the purchaser had told her that if he was not willing to accept the smaller sum the full amount would be paid, and that he had made arrangements for the additional amount and the $1,000 was actually put up.

Manifestly the defendants had concluded not to sell the farm, and in order to avoid liability for payment of the commission, made the change in the sale contract the excuse for not consummating the sale and of avoiding the payment of the commission. The making of a sale contract and the execution of a deed were matters to be

worked out by the owners and the buyer. When plaintiff had found a purchaser ready, willing and able to buy on defendants' terms she had fulfilled her part of the broker's agreement and the defendants could not avoid payment, but Meng declared that they had decided not to sell and that "the land is off the market."

The objection to the change made in the sale contract appears to be a feigned rather than the real purpose of not consummating the sale to the purchaser. If no sale contract had been prepared and plaintiff had left the owners and purchaser to complete the transaction, as she might have done, there could have been no doubt that her duty had been done towards her employers, and that her commission was earned. She was not required to procure from the purchaser a binding contract of sale. (*Beougher v. Clark,* 81 Kan. 250, 106 Pac. 39.) The matter of the preparation of the sale contract and the change made in it in an endeavor to aid the contracting parties was magnified at the trial beyond its actual importance. The evidence relating to it was pertinent to the question whether the purchaser produced by the plaintiff was able, ready and willing to buy the land on the terms and the price specified, but the steps taken with respect to the sale contract were not controlling as to the liability of defendants. The fact that there may be offers and counter offers as to terms and price of property placed in the hands of a broker, or that the purchaser did not accept some of the conditions in the first instance, did not operate to relieve the defendants from liability for the commission under the circumstances established by the evidence. (*Wells v. Hazlett,* 125 Kan. 265, 264 Pac. 19.) See, also, *Grimes v. Emery,* 94 Kan. 701, 146 Pac. 1135, and cited cases.

The matter of time in producing a purchaser, all occurring within twenty-four hours, is not a good basis for avoiding the payment of a commission actually earned. There was no lack of diligent effort on the part of the plaintiff to find a purchaser, as the negotiations begun by her on the afternoon of April 5 were substantially completed that day, and the forfeit money of $1,000 was actually produced on the next day. The fencing as to the amount of the advance payment and the so-called change of the sale contract occurred on the 6th, but the purchaser had in fact arranged for the $1,000 payment on the 5th and had actually made it on the following day. Besides, under plaintiff's employment by defendants she

was entitled to a reasonable time to produce an able and willing purchaser in accordance with her general agency. This had been effected before the defendants undertook to terminate the agency and take the land off the market. The effort to aid the parties in obtaining the signing of the sale contract cannot be regarded as a special agency, nor anything more than an incident of the general agency vested in plaintiff. The special findings, interpreted in the light of the evidence and the concessions of the parties, cannot be regarded as inconsistent with the general verdict.

Fault is found with the instructions given the jury, in that the court failed to instruct as to fraud and infidelity on the part of the plaintiff in respect to changing the contract of sale and in filing the contract of record after defendants had repudiated the agency. It is clear that there was nothing approaching fraud in the dealings of plaintiff with the defendants and no concealment or lack of fidelity to her duties as agent. The evidence reveals nothing but good faith and diligence in her efforts to obtain a purchaser, and it is well shown that she did procure one who was able, ready and willing to take the land on the stipulated terms, and that this was accomplished before defendants announced a termination of the agency and a refusal to sell. What subsequently occurred between them is of little importance so far as the liability for the commission is concerned. Plaintiff did afterwards file the contract for record, which defendants say operated to cloud their title and was done for that purpose, but this occurred after the defendants declared plaintiff no longer their agent and had withdrawn the land from the market. Doubtless the plaintiff then discovered that she would have to fight to recover the commission that she had earned. If there had been any fraud or lack of good faith in dealing with her principals in procuring a purchaser, an instruction would have been warranted as to its effect upon the right to a commission, but we discover nothing in the evidence to require such an instruction. The charge given fairly presented the issues involved, and the failure to give the requested instructions furnish no ground, we think, for a reversal of the judgment, nor do we find anything material in the complaints of rulings made upon the special findings.

The judgment is affirmed.