No. 29,148.

ROBERT C. MAYSE, *Appellant*, v. JOHN B. GRIEVES, *Appellee.*

(285 Pac. 630.)

Opinion filed March 8, 1930.

*Francis C. Price* and *Floyd N. Cossman*, both of Ashland, for the appellant; *Robert C. Mayse, pro se.*

*H. R. Daigh*, of Ashland, *Lloyd A. Rowland* and *James D. Talbott*, both of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is taken by plaintiff from an adverse verdict and judgment in an action by him to recover a commission on a sale of real estate in Clark county.

Appellant urges in his brief three points of error in particular, as follows:

1. "Error in not directing a verdict for plaintiff. Verdict not sustained by sufficient evidence and contrary thereto."

2. "Error in giving instruction No. 4 of the general charge and refusing the special instructions requested by plaintiff."

3. "Payment of commission was not dependent on defendant getting the initial payment at bank."

The testimony is confusing as to the terms used in the oral contract between the parties as to whether the purchaser was to pay the fifty cents per acre commission if he bought the land or if he took the land. Both parties used both expressions in their testimony in a measure as if they were synonymous, whereas a wide distinction is made in them when applied to the making of a written contract of purchase and later failure to conclude the purchase. This was a proper matter for the jury, and we shall need to consider it only in connection with the instructions.

The evidence shows that the plaintiff was the attorney of the defendant and wrote him suggesting that he become interested in the Simmons ranch of 2,480 acres that could be purchased for $15 per acre. The defendant replied and soon thereafter came to Clark county to see the land, first going to the office of his attorney, the plaintiff, where the commission of fifty cents per acre was agreed upon orally. They then went to the ranch, examined it carefully and in detail, and then went to see the owner, Mr. Simmons. The plaintiff proposed that he talk with him first while defendant wait outside. The result was the owner agreed to reduce the price by $2,200, making it even $35,000. Plaintiff then had him meet the defendant and stated to defendant that the owner had agreed to accept $35,000. The defendant then stated to the owner in the hearing of plaintiff the terms to which he would agree, namely, $1,000 to be placed in a bank until titles were approved, then the balance of above mortgage to be paid in cash. The owner accompanied them to town and plaintiff wrote a contract for the sale and purchase of the ranch containing the following two separate provisions as to payments:

"One thousand dollars cash to be paid by second party to first party at the execution of this contract, the receipt of which the said second party hereby acknowledges; . . .

"With the execution of this contract second party deposits in the Stockgrowers National Bank, Ashland, Kan., $10,000, to be held in escrow until the abstracts showing title in first party are sufficient and approved."

Otherwise the contract provided for the payment of the balance after titles were examined and an assumption of the existing mortgage and deposit of deed in bank in escrow.

The defendant seriously objected to these terms and considerable evidence is given in connection therewith. The evidence differs here not as to the objections of the defendant, but as to when they were made, whether before or after plaintiff had written the contract, and whether the contract as written was signed before or after the unsuccessful efforts had been made to procure the money from the local bank or from Frank Goebel, as suggested by the plaintiff. Defendant says he signed the contract upon the statement of the plaintiff that arrangement could be made at the local bank for the money for a few days, and if not it could be obtained from Frank Goebel, of Kansas City; but the local bank declined, and they were unable to communicate with Mr. Goebel by telephone, and plaintiff left the papers at the bank when they went upstairs to telephone Mr. Goebel. Plaintiff says that defendant signed the contract after these interviews had been unsuccessful, defendant telling plaintiff to leave the papers at the bank and that "he would bring up a check in the morning." Nothing further was done in the matter and about a week later the plaintiff wrote defendant, sending him the original contract and telling him of the immediate sale of the ranch to another within thirty minutes after this deal was called off.

It will be readily recognized that with these serious conflicts in the testimony as to so many vital points in the case and with a verdict for defendant having received the approval of the trial court, there is nothing left for a court of review to do as to such matters except to see if there is sufficient evidence in those particulars to support the verdict.

There were only two witnesses — the plaintiff and defendant. There was sufficient evidence to support a verdict for either one of them. The statements of each were very positive, full and complete. To go further in this matter would be to invade the realm of the jury. In this connection it is urged that the evidence of the defendant was incompetent because the only answer was an unverified general denial, that the evidence was not controverted on any issuable fact, and no affirmative defense was pleaded. We note that the petition alleged that the plaintiff did on a certain date secure a sale of said real estate to the defendant for a certain sum, which was accepted by said defendant. It appears to us that the general denial of that allegation fairly puts in issue all the matters on which conflicting testimony was introduced. It certainly puts in issue

whether a sale was made and the terms thereof agreed to and accepted by the defendant.

Appellant insists that there was error in giving the fourth instruction and in not giving certain instructions requested by appellant. The fourth instruction was as follows:

"4. The defendant admits that he employed plaintiff to act as his agent to effect for him the purchase of the Simmons ranch, but claims that the contract between himself and plaintiff was that he should pay plaintiff a commission of fifty cents per acre in case he actually took the land, and that he did not take the land because the owner was not ready and willing to sell according to the terms proposed by him.

"In this case if you find the contract between plaintiff and defendant to be as claimed by the defendant; that is, that no commission was to be paid unless defendant actually took the land, and if you further find that the defendant did not take the land because plaintiff had not secured an owner ready and willing to sell on terms satisfactory to the defendant, then your verdict should be for the defendant."

The instruction preceding this one gave to the jury the theory of the plaintiff, and it was proper to fully inform the jury of the theory on each side. Two of the main objections to the instruction are the references of the court to taking the land, instead of buying the land, and the reference to the sale being "on terms satisfactory to the defendant." Reference has already been made to the conflict and confusion in the testimony as to buying or taking the land and this is further emphasized by the effort to make the contract, as written, complete in itself and binding upon all parties. It is argued that the latter clause would readily give the defendant the privilege of changing his mind after making the contract. The force and effect of that written contract is the vital question involved in this appeal. Appellant insists that it speaks for itself, is complete in itself, showing a full and complete agreement to the sale and the terms of the sale, and is an enforceable contract not subject to any conditions as to its execution or delivery, and that its terms cannot be contradicted, varied or altered by parol evidence, especially when there are no allegations of fraud or mistake. These are sound principles and they have been fortified by numerous authorities in the exhaustive brief of the appellant, but there is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered. It has regularly been held that where a contract is incomplete or silent in any particular, parol evidence is

admissible to show the actual agreement between parties; and this is not limited to cases where there is ambiguity. (*Royer v. Silo Co.,* 92 Kan. 333, 140 Pac. 872; *Kanzius v. Jenkins,* 98 Kan. 94, 97, 157 Pac. 417; *Handrub v. Griffin,* 127 Kan. 732, 275 Pac. 196.)

"Parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention, and, where the contract is silent or ambiguous concerning a vital point incident thereto, parol evidence will be received to aid in its construction." (*Berg v. Scully,* 120 Kan. 637, syl. ¶ 2, 245 Pac. 119.)

This contract was not only silent as to the condition of being able to get the money at the local bank or from Mr. Goebel, but it was incomplete and inaccurate to an extent that neither party might wish to be bound thereby. It recited that the purchaser had paid $1,000 cash and the owner acknowledged receipt therefor, when no money had in fact been paid. When it was signed it was not complete because something remained to be done—not only the payment of the money for which the receipt had been given, but according to the theory of the defendant accepted by the jury on conflicting testimony, the fulfillment of the condition of getting the money from the local bank or from Mr. Goebel.

"A contract relation between the parties was not established so long as something remained to be done to perfect an enforceable contract. When the parties bargaining intend that a memorandum shall not be binding, while an essential thing remains to be done to close the transaction, it cannot be regarded as a complete contract until that thing is done." (*Weinhold v. Weinhold,* 115 Kan. 395, 398, 223 Pac. 297.)

"A contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none; nor does it regard an arrangement as completed which the parties thereto regard as incomplete." (6 R. C. L. 616.)

"A conditional contract is an executory contract, the performance of which depends on a condition. It is not simply an executory contract, since the latter may be an absolute agreement to do, or not to do, something, but it is a contract whose very existence and performance depend on a contingency and condition." (13 C. J. 246. See, also, *Shields v. Johnson,* 124 Kan. 155, 257 Pac. 926; *MacLorinan v. Finley,* 124 Kan. 637, 261 Pac. 587.)

In *Morris v. Francis,* 75 Kan. 580, 89 Pac. 901, it was said in a case involving the right of a real-estate agent to recover a commission when, as in this case, the owner offered to take less than the announced price that—

"If, however, the lower price offered by the prospective purchaser was not

accepted, and a sale was not consummated, no commission was earned. In such a case the broker has not performed his agreement to find a purchaser until he produces one who in fact becomes a purchaser." (p. 581.)

The court in giving the fourth instruction did not regard the written contract as complete in itself and unconditional, nor as having been delivered with full purpose to be binding upon the parties thereto, as urged by the plaintiff, but framed it in harmony with the above and other authorities. The evidence of the defendant, if accepted, showed no delivery of the contract except conditional, and therefore the court was fully within the evidence to refer to the making of the sale "on terms satisfactory to the defendant."

"A written contract, whether under seal or not, may, by parol, be proved to have been delivered to the obligee upon a parol condition that it was not to become binding until the happening of a future event, and may be avoided upon the further proof that such event has not occurred, especially if the contract is one not required to be under seal." (6 R. C. L. 643.)

"Evidence of a parol agreement is admissible to prove that a written contract for the sale and exchange of property, signed and deposited in a bank, should not take effect until one of the parties has had an opportunity for five days to test the truthfulness of representations made concerning the property of the other to be exchanged, when such oral agreement does not contradict any stipulation in the writing." (*Stroupe v. Hewitt*, 90 Kan. 200, syl. ¶ 2, 133 Pac. 562.)

In the opinion in the last case above cited it was said:

"The contract, as before stated, was deposited in a bank and the conditions of the deposit were not stated in the writing. A contract cannot be varied until there is a contract, and there is none until it takes effect. Evidence that a writing purporting to be an agreement is not to take effect until the happening of some event or the ascertainment of some fact may be received, not to contradict the writing, but to show when it took effect, or that it never took effect." (p. 203.)

It is claimed by appellant that at least three of the instructions requested by him should have been given. They were to the effect that the written contract bound the defendant and fixed the rights of the plaintiff, and that the refusal of the defendant to carry out the terms of the contract would not release him from his obligation to the plaintiff. We think they were subject to a modification to fit the facts and circumstances of the case, and there was no error in refusing to give them, as requested, nor to give the peremptory instruction requested.

It is argued that plaintiff had a right to recover his commission even if the written contract is wholly ignored, and independent of

that contract. We see nothing wrong with that contention, and think that privilege is included in the third instruction given to the jury where the plaintiff's rights are not restricted to the written contract.

Error is assigned in the reference to the plaintiff by defendant's counsel, as the trusted attorney of the defendant, and in the introduction of the letter sent by plaintiff to defendant after the close of these negotiations, and the testimony of a subsequent conversation between plaintiff and defendant about the payment of the commission, because they tended to prejudice the jury. The first should be no reflection upon anyone, either in his business or professional engagements, and the latter two concerned the question of the obligation of the defendant, and while any such matters might be used to prejudice a jury, it is not at all apparent that any such result followed.

Appellant asserts that payment of commission was not dependent on defendant getting the initial payment at the bank. It would not seem so, but it was dependent upon the defendant buying or taking the land, and this condition seemed to have something to do with the defendant buying or taking the land. The case of *Orr v. Meng*, 126 Kan. 723, 271 Pac. 292, and numerous other cases are cited to the effect that one cannot avoid the obligation of commission by subsequently changing his mind or attempting to avoid a valid and binding contract of sale and purchase, but we have not been able to recognize the written document in this case as such a contract.

We find no error in the giving or refusing to give instructions, nor in the introduction of evidence, nor in overruling the demurrer to plaintiff's evidence and the motion for new trial.

The judgment is affirmed.

HARVEY, J., not sitting.