No. 31,131.

W. E. WILSON, *Appellant*, v. GEORGE WOOLVERTON, WILLIAM MANGUS and JOHN F. HESTON, *Appellees.*

(21 P. 2d 313.)

Opinion filed May 6, 1933.

*Frank J. Horton* and *Forrest J. Horton,* both of Goodland, for the appellant. *George D. Freeze,* of Goodland, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover rents. Plaintiff was the owner of a half section of land which was leased to the defendant Woolverton. On June 14, 1929, when the wheat on said land was still growing and unmatured, defendant Mangus, who was a real-estate agent and was the agent of defendant Heston, wrote plaintiff a letter stating, in part:

"I am inclosing Kansas form of warranty deed, for your execution to John F. Heston, who has placed in the First National Bank, Goodland, Kan., the sum of one hundred dollars as earnest money. If married, have your wife sign and acknowledge the deed with you, then forward the deed to the First National Bank, Goodland, Kan., with your instructions to be delivered upon the payment of the full amount of $5,000. You are to furnish abstract showing merchantable title.

"The deed will be taken upon the approval of title.

. . . . . . . . . . . . . . .

"Also wire me of your acceptance of the offer."

On June 17 plaintiff telegraphed acceptance to Mangus and on the same day wrote the bank that Mangus had written him, and he inclosed the deed and abstracts and gave the bank instructions for delivery, the sixth instruction being: "Purchaser to have until July 1, 1929, to close transaction."

He also inclosed a confidential communication, reciting:

"Referring to instruction No. 6, my letter—this date of July 1, 1929, is not an arbitrary date. You may close on or before July 1, 1929, or you may also allow a few days past July 1, 1929, if it is necessary in closing, but should the parties want longer than July 1 you will have them put up an additional $900 forfeit money in your bank.

"I make this a separate matter, confidential, to you, as it may be necessary for you to show your instructions to purchaser."

On July 5 plaintiff telegraphed the bank inquiring if the deal had been closed and the remittance made; the bank replied it had not. On July 5 the plaintiff wired Mangus:

"Bank advises no settlement made. Your time up. Advise by wire."

On July 9 plaintiff wrote the bank a letter, stating:

"As you know, Mr. Mangus failed to go through with this deal, and this letter is for the purpose of giving you further instructions regarding the deed and abstracts which you now hold."

And instructing the bank to erase the name of the purchaser, to have abstracts certified, that he had the land listed with several real-estate men in Goodland at $5,000 net to him, authorizing the bank to insert name of purchaser in deed, to pay all taxes due, and to remit $5,000, less charges and taxes, and—

"You are authorized to deliver deed and abstracts to purchaser when you have in your possession for delivery to me the sum of $5,000, less the above charges."

The letter also inquired as to whether the $100 forfeit money had been put up by Mangus. Under date of July 12 the bank acknowl-

edged receipt of the papers and advised that Mangus had never put up the forfeit. Under date of August 22, the plaintiff wrote the bank to return the deed, that he would make a correction in the same and return it to the bank about August 25 or 26. On August 22, without knowledge of the above letter by either the bank, Mangus or Heston, Heston paid the bank $5,000 in full for said land and took the deed, requesting the bank to write in the name W. T. Green, as grantee. The deed, which contained no reservation of crops, was recorded August 24. There was some corn growing on the land to which plaintiff makes no claim. In so far as the above facts are concerned, they are included in the lower court's written judgment. In addition, the following undisputed facts appear: Under date of August 23, defendant Woolverton wrote plaintiff stating, in part:

"I just finished threshing; got 3,000 bu. barley and 576 bu. of wheat. . . . One man was out in a. m. and said he had bought the land and gets the rent. Another was out in p. m. and says to hold rent; that he is on a deal for the place. Don't know who to pay rent to. ·Would like to know if you have sold the half section."

That before he paid the rent money to Mangus and Heston he had a telegram from plaintiff reading:

"In answer to your letter, one-fourth of crop belongs to me."

That Mangus had come out to the farm while he was threshing and wanted landlord's share of crop, but Woolverton told him to wait until he came to town; that he came to town and learned land had been sold and he then paid Mangus and Heston; that Green had been out before Mangus and that when Mangus was out he had a note from Green to pay the rent to Mangus and Heston.

Plaintiff brought suit to recover the sum of $416.92 rent share due from Woolverton, alleging that Woolverton, without his knowledge or consent, had turned the same over to defendants Heston and Mangus. Woolverton filed his answer admitting the amount of the landlord's share amounted to $416.92, and that he had paid it to defendants Heston and Mangus, "but denies the knowledge of the right of this plaintiff to the receipt of said rent and relied wholly upon the claim of defendants, John F. Heston and William Mangus to the ownership of said rent."

The defendants, Mangus and Heston, filed their answer alleging plaintiff's acceptance of the offer contained in the letter of June 14, and that the deed was without reservations. On trial, the facts as above set forth were shown. The court, in its judgment, included

part of the facts as shown and found that the bank was an "escrow depositary" and continued as such throughout the entire transaction, and that time was not of the essence of the contract of purchase, and rendered judgment in· favor of the defendants. The plaintiff appeals and assigns as error the rendering of judgment contrary to the evidence and the overruling of his motion for a new trial.

The first question presented is whether the offer of Mangus was accepted. His offer contained the statement that $100 had been placed in the bank as earnest money and that plaintiff should sign and acknowledge a deed and forward to the First National Bank at Goodland, with instructions to be delivered upon payment of the full amount of $5,000. It is now conceded that the $100 was not placed in escrow at the time this letter was written nor at any other time. The offer was incomplete and, if it be assumed that plaintiff's telegram of acceptance would have otherwise made a contract, there was none under the facts here. There was no meeting of the minds. Had the plaintiff known that the earnest money had not been deposited as Mangus stated it had, he might have waived it, but on learning that it had not, he promptly gave the bank new instructions. See *Weinhold v. Weinhold,* 115 Kan. 395, 223 Pac. 297. The original offer made by Mangus, whom the court finds to be the agent of Heston, directed the plaintiff to send his deed with instructions, and these instructions were that the transaction should be completed July 1. The confidential instructions allowed a few days past July 1, if necessary in closing, but should the parties want longer than July 1 "you will have them put up an additional $900 forfeit money." The original offer made by Mangus was not complete and it was never made complete. As soon as the plaintiff discovered the situation, and on July 5, he telegraphed Mangus that his time was up, and he promptly directed the bank with reference to the disposition of the documents. Under the new instructions, Heston, ,or anyone else complying therewith, was entitled to take the deed, but until someone did take it, the plaintiff was at liberty to withdraw it. On August 22, when Heston claims to have complied with the original offer, he did no more than accept the second offer made by plaintiff as contained in his letter of July 9 to the bank at Goodland.

The court's finding that the bank held the deed in escrow is a conclusion of law not warranted by the facts. The entire evidence as to the offer of plaintiff and what was done up to the time of its acceptance is in writing and is undisputed. Defendants in their brief state that Mangus' letter of June 14 to plaintiff is not an offer,

but that plaintiff's letter of June 17 to the bank, inclosing the deed, and his subsequent letter of July 9 made an offer, which anyone could accept unless the offer were previously withdrawn. Immediately after plaintiff learned that Heston had not completed the original transaction, he wrote to the bank the letter of July 9, which superseded the letter of June 17. These letters, together with the deed, did not in any manner constitute an escrow. It is stated in 21 C. J. 866 that in order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter and a consideration, but the parties must actually contract, and the deposit must be absolute and beyond the control of the depositor, and in *Moore v. Moore,* 93 Kan. 697, 150 Pac. 230, that the effect of the deposit of a deed in escrow, as between the parties thereto, is largely a question of intention of the parties, and especially of the grantor. The trial court, in rendering judgment, quotes the definition of escrow contained in the first syllabus of *Davis v. Clark,* 58 Kan. 100, 48 Pac. 563, but an examination of the case shows there was a contract between the parties, and that the escrow was provided for therein. The plaintiff's letter of July 9 and the previous deposit of the deed under the arrangement which failed, did not constitute an escrow for these reasons, if for no other: the deed was not irrevocably placed with the bank, there was no consideration, and there was no contract. There was an offer to deal and nothing more.

When, on August 22, the offer was accepted, the consideration was paid, and the deed was delivered, there was an executed contract. There is no dispute that the deed then delivered, and which was executed by plaintiff about June 17, contained no reservations or exceptions with reference to crop. Neither is there any dispute that on June 17 the wheat and barley on the real estate were immature and growing, or that on August 22 they were matured, harvested and, if not already threshed, were in process of threshing. And that brings us to the real question in the case—Was the purchaser entitled to the landlord's share of the crop? If he was, it is by application of the doctrine of relation. It was said in *Scott v. Stone,* 72 Kan. 545, 548, 84 Pac. 117, that the doctrine is of ancient origin and has always been applied, both at law and in equity, to meet the requirements of justice, to protect purchasers, and to effectuate the intent of the parties to the contract; and whether by this rule the operation of the deed will be carried back to the contract of sale, to the execution of the deed, or only to its actual delivery to the

parties, will depend upon the intent of the parties as shown by the transaction. In *Baker v. Snavely*, 84 Kan. 179, 114 Pac. 370, the doctrine was discussed and it was held that whether a deed executed and placed in escrow relates back to the time and execution thereof so as to vest the grantee with full title from that time or whether it becomes effective only upon full performance seems to depend upon which of the two theories will promote justice under all the circumstances of the individual case. See, also, 53 C. J. 1185, 8 R. C. L. 1018, 10 R. C. L. 640. It will be noted that the doctrine is usually considered in connection with deeds placed in escrow, and not in connection with deeds deposited as is the one here.

When plaintiff wrote the bank his letter of July 9 he made an offer open to acceptance by anyone, the parties defendant or anyone who wanted to pay the named price for the land. Until there was an acceptance, there was no contract, and a contract is operative as such only from the time of the meeting of the minds of the parties as to its terms. (13 C. J. 584; 6 R. C. L. 592, 599.) The general rule is stated in 18 C. J. 216, and it was held in *Babbitt v. Johnson*, 15 Kan. 252, and in *Taylor v. Woodbury*, 86 Kan. 650, 651, 121 Pac. 1119, that a deed takes effect from the time of its delivery, and here there is no controversy as to date of delivery. When Heston, on August 22, accepted plaintiff's order, a contract was completed and it was fully executed by his paying the consideration and receiving the deed.

Assuming for the moment that the doctrine of relation might be applicable here, had Heston been compelled to pay interest, taxes or other charges, there might be some reason to say that equity compelled its application, but it is clear that the situations existing and the reasons invoked in other cases are not present here, and the doctrine should not be applied.

There being no dispute that the crop had been harvested on August 22, it belonged to the plaintiff. (*National Bank v. Beegle*, 52 Kan. 709, 35 Pac. 814.) A contention is made that if plaintiff claims the rent he can only do so by disaffirming the contract of sale. It is untenable. The purchaser knew when he bought the land that the crop had been harvested and he took no more title thereto than he did to any other personal property there might have been on the real estate.

The judgment of the lower court is reversed and the cause is remanded with instructions to render judgment for the plaintiff.