F. Warren HICKS, Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 16434.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 5, 1975.

Rehearing Denied July 10, 1975.

**540**

Homer T. Bouldin, F. Warren Hicks, Houston, for appellant.

Jonathan Day, City Atty., Fred Spence, Senior Asst. City Atty., Houston, for appellee.

COLEMAN, Chief Justice.

This is an action in trespass to try title, the purpose of which is to establish that the plaintiff's title is free of an easement for street purposes. The plaintiff's petition also contained a count seeking to recover certain funds deposited with the City of Houston. After a trial to a jury the trial court entered a take nothing judgment on the action in trespass to try title, but ordered that the plaintiff recover the money at issue. The appeal is restricted to the trespass to try title action.

In 1906 a plat of the E. C. Crawford Addition was filed in the Map Records of Harris County, Texas. The various streets shown on said plat were dedicated to public use. A street two blocks in length, referred to herein as Sul Ross Street, was so dedicated. The land involved in this suit is that portion of Sul Ross Street which extends from Bammel Lane east to Second Avenue and lies between Blocks 15 and 16 of the Crawford Addition. The land covered by this easement has never been used as a street or graded, paved or otherwise prepared for street purposes. The plaintiff contends that he is the owner of the land underlying the easement shown on the plat and that said easement has been abandoned for public street purposes by said City. The City contends that, while it began the process of abandonment in accordance with its charter and ordinances, a determination was reached not to complete the abandonment, and that as a consequence the easement was not abandoned and the City retains title to the easement as trustee for the public.

On October 8, 1970, through their attorney, F. Warren Hicks and Livingston Kosberg by letter in which the representation was made that they were the owners of the property adjacent to the portion of the street involved in this suit requested the City to abandon the easement for public street purposes. The letter was referred to Mr. Earl J. Martin, Director of Real Estate,

for investigation. On November 17, 1970 Mr. Martin reported to the Mayor that the request had been reviewed by the Joint Referral Committee and "inasmuch as Sul Ross is not a through street and there are no city plans for its future use as such" recommended that the easement be abandoned and sold to the abutting owners "in accordance with current City policy" subject to the concurrence of the privately owned utility companies; that the property be appraised by two independent real estate appraisers; and that the Real Estate Department and the City Attorney be authorized to take the necessary actions. On November 24, 1970 the City Council, by motion, adopted the recommendation of the Joint Referral Committee that the property in question "be abandoned and sold to the abutting owners in accordance with current City policy, subject to the concurrence of the privately owned utility companies, and that Mr. C. H. Hurlock, Jr. and Mr. Clyde D. Gillespie be and they are hereby appointed to appraise said property, inasmuch as the value of said property exceeds $5,000.00, and the Director of Real Estate Department and the City Attorney be and they are hereby authorized to take the necessary action, accordingly, inasmuch as Sul Ross is not a through street and there are no City plans for its future use as such."

The appraisals were made and on June 25, 1971 Mr. Martin wrote Mr. Bouldin informing him that the City council has authorized "this department and the City Attorney to prepare the necessary papers in accordance with current City policy. This letter is the City's offer to consummate the transaction on the basis of a consideration of $21,375.00." The letter further stated that if the City's offer was acceptable the petitioners should so state by letter and deposit the required amount of money which would be held in escrow pending preparation and delivery of the executed instruments of conveyance. The sum of money required was deposited with the City and letters were secured from the private utility companies establishing that these companies had no need for the easements, the last letter being received on September 21, 1971.

On February 24, 1971, Mr. Hicks executed an option for the sale of a portion of his property to Mr. Jack Finney. On May 17, 1971 Block 15 was sold to John R. Debobbin, Trustee, by Mr. Hicks and on May 24, 1971 he sold and conveyed Block 16 to Jack Finney.

The property conveyed to Mr. Finney was described as follows:

"Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11, Block 16 Crawford Addition, Houston, Harris County, Texas, according to Map thereof of record in Volume 2, Page 12 of Harris County Map Records, which property excludes all of Sul Ross Street, and does not extend north of the lines of said Lots 8, 7, and 1, of Block 16 of Crawford Addition."

The deed also provided that the conveyance was made and accepted subject to easements, if any, of record. The conveyance to Mr. Debobbin contained similar language. It must be noted that these deeds, as well as several deeds into Mr. Hicks, referred to the plat of record in the Harris County Map Records.

On July 27, 1971, plaintiffs' attorney, Mr. Bouldin, wrote Mr. Earl Martin a letter in which he stated:

"A few days ago I received a telephone call from a man in your department advising that a letter from me or some attorney giving an opinion that F. Warren Hicks and Livingston Kosberg are the owners of the land adjacent to the above captioned land is required.

"Upon sufficient investigation I gave you my opinion that Livingston Kosberg is the owner of the adjacent land as previously shown by plats and letters from me which I sent you."

The letter then named the lots which Mr. Hicks had owned and had conveyed, and the City was informed by the letter that Mr. Hicks had retained title to the land underneath the easement. Mr. Martin testified that when he learned that Mr. Hicks no longer owned the property adjacent to that which was proposed to be abandoned he halted the proceeding. Finally, on October 7, 1971, Mr. Bouldin wrote Mr. Martin requesting return of the money which he had deposited for his clients with the City. The money was not returned and this suit ensued.

The plaintiff does not seek to force the City to abandoned the street and issue a deed to him as provided by the City ordinance. He contends that the easement was abandoned by the action of the City Council in passing the motion of November 24, 1970, combined with the fact that the street was never opened and that the easement had been unused for many years. Section 2–7 of the Houston Code of Ordinances, entitled "Abandonment of Streets", provides:

"The following requirements shall be followed upon the abandonment of any public street, as distinguished from an alley or easement;

"(1) . . .

"(2) If the street in question is a dedicated street in which the City owns only an easement for street purposes and the abutting land owners or persons who do not fall in the class described in subsection (1) above, then the City, upon abandonment of the street, will deliver a quitclaim deed to such abutting owners upon payment of one-half (½) of the appraised market value of the land covered by the street, such market value to be fixed by the City, the determination of the city council as to such market value being final."

Section 2–8 of the Houston Code, entitled "Abandonment of Easements", reads:

"Upon the abandonment of utility easements, drainage easements, and miscella-neous easements of like type, the city council shall, in such cases, pass an ordinance vacating, closing and abandoning such easement and in such ordinance, shall recite that the city thereby quit-claims its interest in and to the land covered by such easement to the owners of the fee simple title, whoever such owners might be. The city will not prepare or execute any quitclaim deed to any particular person or persons."

Section 2(b) of Article II of the Houston City Charter reads:

"The city shall have all powers that are or hereafter may be granted to municipalities by the Constitution or laws of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein in such manner as shall be provided by ordinance or resolution of the council."

Article VII, Section 9 of the Charter provides:

"In addition to the powers already possessed by it, the City of Houston shall have the power to lease any real estate or interest therein, mineral or otherwise, owned by it. The City Council shall not have the power to sell or dispose of any real estate or interest therein, or make any mineral lease of land belonging to the City, except by ordinance adopted by a vote of two-thirds of the Council . . ."

The provisions of the Houston Code which were offered into evidence do not establish a procedure for the abandonment of a street or street easement. Section 2–7 of the Code sets out the requirements to be followed "upon the abandonment of any public street . . ." The subsequent provisions deal with a sale. upon abandonment. Section 2–8 dealing with the abandonment of utility, drainage and miscellaneous easements "of like type" requires that the city council pass an ordinance va-

cating, closing and abandoning such easement. There was testimony at the trial of this case concerning the policy which had been followed by the City in considering petitions for the abandonment of street easements. Mr. Martin testified that when such a petition was received the matter was reviewed by a committee comprised of the Director of City Planning, who determines whether or not the streets will be needed in the future for traffic circulation, the Director of the Public Works Department, to determine if there is any present plan for using the street for utilities or any present plans for opening the street, the Director of Traffic, to determine whether or not the street might be needed for future traffic circulation requirements, the Director of Real Estate, for the purpose of seeing that the policy of abandonment is followed, and finally a representative of the City Legal Department. This committee prepares a recommendation to be presented to the City Council. If the City Council determines that the easement should be abandoned and authorizes the Real Estate Department to proceed in accordance with current City policy, the Real Estate Department then requests the Public Works Department to prepare a survey of the easement to be abandoned. The Real Estate Department then checks with the Fire Department and the Police Department to see if they have any objections to the abandonment of that particular street, and further checks to determine who owns the property adjacent to the street. In the meantime a staff appraiser of the Real Estate Department conducts an appraisal of the property which must be reviewed by the chief of that section. If the value is found to be in excess of $5,000.00, then the Real Estate Department recommends to the City Council that two independent appraisers be employed to appraise the property. The City's representative in the negotiations is the right of way agent. He usually has certain requirements to be met by the petitioner, one of which is that the petitioner furnish an attorney's opinion that the petitioner is in fact the abutting owner on the portion of the street to be abandoned. When the appraisals are received they are submitted to the Real Estate Department for their review and a recommended price for the abandonment is approved. Thereupon the petitioner is advised in writing of the City's offer to proceed with the abandonment upon the payment of a sum of money based upon the appraised value. If the City's offer is accepted in writing and the money required is deposited with the City, the Real Estate Department then prepares a letter of transmittal to the City's legal department transmitting copies of the various items in the file. The City Attorney's office then prepares the necessary instruments to effect abandonment of that particular street easement. The City Attorney's office then prepares the necessary instruments and ordinance and once these instruments are executed and returned to the Real Estate Department, the instruments are mailed to the petitioner and the City comptroller is advised that the matter has been closed and that the money can be credited or transferred to the proper accounts. He further testified that in regard to the property in controversy no city ordinance was passed abandoning the property and no quitclaim deed or other conveyance was executed. Mr. Martin further testified that he stopped the proceedings when it came to his attention that the petitioner was no longer the abutting property owner.

The trial court submitted the following issue to the jury:

"Do you find from a preponderance of the evidence that the City of Houston ever actually abandoned the 10,000 square feet of land in dispute?"

To this issue the jury answered: "We do not." A motion to disregard this answer to the special issue was made and overruled by the court.

■ It has been stated as the general rule that where a municipal council is given power to legislate in regard to a particular subject matter, and the statute or charter is silent as to the mode in which the power shall be exercised, an enactment by the municipal council is valid whether it is in the form of an ordinance or resolution, even if the enactment is of a general permanent nature. However, where the governing statute or charter requires, either expressly or by necessary implication, that the power be exercised by ordinance, it cannot ordinarily be exercised by resolution. 56 Amer. Jur.2d, Municipal Corporations, Sec. 152, p. 205. It is also stated that in substance there is no difference between a resolution, order, and motion. 56 Amer.Jur.2d, Municipal Corporations, Sec. 344, p. 370.

■ In a case involving a private easement it was stated that the question of abandonment is one of fact to be determined in each case from all the evidence in the record, and that an essential element of abandonment is the intention to abandon and such intention must be shown by clear and satisfactory evidence. The court further stated that abandonment may be shown by circumstances but the circumstances must disclose some definite acts showing intention to abandon. The non-use of a right is not sufficient of itself to show abandonment, but if the failure to use is long continued and unexplained, it gives rise to an inference of intention to abandon. City of Anson v. Arnett, 250 S.W.2d 450 (Tex.Civ.App.—Eastland 1952, writ ref'd n. r. e.).

The principles quoted above are also supported by the case of McCraw v. City of Dallas, 420 S.W.2d 793 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). After reciting the accepted rule of law that mere non-user of an easement will not extinguish it, the Supreme Court of Texas, in Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (1950), said:

"The record reflects that since the filing of the plat in 1909 the county has opened up certain roads on the tract of land, and has graded some of them and one at least has been paved. The record also shows that the respondent has used a part of this roadway in question as a means to get from place to place on his farm, and that the ditch rider for the present irrigation system on occasion has come thru the gate maintained by respondent in the fence across the roadway . . . As far as this record shows, the lands within the boundaries of this tract are still sold and described with reference to the plat as recorded, and there has been no revocation of the dedicatory plat. This evidence most certainly does not show the use for which the property was dedicated to be 'impossible, or so highly improbable as to be practically impossible,' or that the object of the use for which the property was dedicated has wholly failed as is required for an abandonment of the roads to arise. The facts regarding the alleged abandonment are undisputed. Therefore no jury question arises, but only a question of law . . . We hold there has been no abandonment of the roadway in question."

The evidence in this case shows that many of the dedicated streets in this subdivision are part of the Houston City street system. There is no evidence that the dedication has been revoked. Lots are sold by reference to the recorded plat. The plaintiff sold the land on both sides of this particular section of Sul Ross Street by its lot and block number as shown on the dedicated plat. The jury found that the City has not actually abandoned the street.

■ A city may vacate and close a street or alley on the petition of an abutter for his benefit where the vacation is also for the benefit of the municipality at large. City of San Antonio v. Olivares, 505 S.W.2d 526 (Tex.1974). The conveyance of land by

reference to a map or plat, upon which lots and streets are laid out results in the purchaser or one holding under him, acquiring by implication a private easement in the alleys or streets shown on the plat. This private easement survives the vacation or abandonment of the street by the city. City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969).

In City of Mission v. Popplewell, 156 Tex. 269, 294 S.W.2d 712 (1956), the Supreme Court said:

"This Court has also held that the legal title to city streets belongs to the state, which has full control and authority over them, and the cities exercise only such control and authority as has been delegated to them by the Home Rule Amendment to the Texas Constitution, art. 11, § 5, or by the legislature . . .

"The city controls the streets as trustee for the public. It has no proprietary title nor right to exclusive possession. Its right of control is restricted by its trusteeship. It has the duty to maintain the streets and keep them open and free of obstruction. It can close a street only in the public interest and even then not over the objection of an abutting property owner with a coexisting private easement therein. Kahn v. City of Houston, Tex. Com.App., 121 Tex. 293, 48 S.W.2d 595; Dallas Cotton Mills v. Industrial Co., Tex. Com.App., 296 S.W. 503; 39 Tex.Jur., 603–605."

In City of Fort Worth v. Taylor, 162 Tex. 341, 346 S.W.2d 792 (1961), the Supreme Court stated:

"Although title to the public easement in dedicated streets and alleys rests in the state, the Legislature has granted to at least some of the cities and towns of Texas exclusive dominion over the public ways within their respective corporate limits . . . By the express terms of Article 1175, a home rule city such as petitioner is authorized to regulate and control, . . . vacate, abandon and close, any street, alley, avenue or boulevard. Petitioner may prosecute in its own name suits to require the removal of obstructions from a street, and a necessary concomitant of that power is authority to defend against a claim that the land is owned by a private individual free and clear of any easement in favor of the public. In the absence of fraud or collusion, a judgment adverse to the municipality in such a proceeding also binds the public as such, . . ., and it is not necessary for the city to sue or be sued as agent of the state or trustee for the public before the existence vel non of a public easement can be put in issue."

In Blair v. Astin, 10 S.W.2d 1054 (Tex. Civ.App.—Galveston 1928, writ ref'd), the court held that although the City of Houston had passed no ordinance or resolution closing a certain street, it could by deed relinquish its public easement for street purposes.

In Dykes v. City of Houston, 406 S.W.2d 176 (Tex.1966), the court said:

"It is well settled that 'if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots be sold by him, with reference to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever.' . . .

". . . and Section 18 [Article 1175] grants the power to vacate and close streets when such action is in the best interest of the public. This last power is restricted by Article 4646a, supra, which allows abutting owners to enjoin such action if they have not released any claim for damages they might have or have not been paid compensation through a condemnation proceeding. . . ."

■ The motion passed by the City Council of the City of Houston on November 24,

1970 evidenced an intention to abandon the street "in accordance with its policy." The testimony establishes that before the City would formally abandon its easement under its usual policy certain additional investigation would be made in consideration of the restriction on its power by reason of Article 4646a, Vernon's Annotated Civil Statutes. One of these procedures was to ascertain whether or not the abutting property owners desired the abandonment of the easement. The City discovered that Mr. Jack Finney had not given his consent to the abandonment of the easement. They also discovered that Mr. Livingston Kosberg and Mr. Sidney L. Shlenker claimed title to land abutting on Sul Ross Street and objected to its being vacated by the City of Houston. While Mr. Hicks attempted to reserve the fee title to the land underlying the easement in his conveyance to Mr. Finney, nevertheless, Mr. Finney was an abutting owner. We conclude that the City did not intend to, and did not, abandon the easement in question. There is evidence to support the conclusion that the abandonment was to be authorized by ordinance and evidenced by a quitclaim deed. The ordinance was not passed and the quitclaim deed was not executed and delivered.

The appellant offered no evidence to prove a regular chain of title from the State, or a common source of title. There is evidence that the lots abutting on Sul Ross Street, the basis of his claim of title to the fee underlying the street, were conveyed to him by general warranty deeds, subject to the easements of record, which were recorded, and that he had paid the taxes on these lots. There is evidence that he conveyed these lots and that at least one of his grantors had entered into possession of the lots and erected improvements thereon. There is no testimony that Mr. Hicks, in person or by tenant, has entered on the lots involved in this case and made any use of them or erected any improvements on them. There is no testimony establishing actual posses-

sion by Mr. Hicks. The evidence is insufficient to establish prior possession or title by limitation, as a matter of law. Reiter v. Coastal States Gas Producing Co., 382 S.W.2d 243 (Tex.1964); Kincheon v. Killian, 454 S.W.2d 878 (Tex.Civ.App.—Austin 1970, no writ hist.); Pettis v. Achille, 313 S.W.2d 348 (Tex.Civ.App.—Houston [1st] 1958, n. w. h.); Garcia v. Garza, 161 S.W.2d 297 (Tex.Civ.App.—San Antonio 1942, n. w. h.).

Judgment affirmed.