(589 P.2d 985)

No. 49,420

Bryce M. Roberts and Delores A. Roberts, *Appellants,* v. Gilbert Osburn and Judy Osburn, his wife; Louis W. Fundis and Annabelle Fundis, his wife; Tri-In-Co., Inc., a Kansas corporation; Carl A. Butell and Susan A. Butell, his wife; The Baldwin State Bank, Baldwin City; Franklin Savings & Loan Ass'n, Ottawa, *Appellees.*

Opinion filed February 2, 1979. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*F. Duane Roberts,* of Baldwin City, for the appellants.

*Jerry L. Donnelly,* of Lawrence, for the appellees.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: The plaintiffs appeal from the trial court's refusal to quiet their title to residential real estate in Baldwin City.

The plaintiffs, Bryce and Delores Roberts, will be referred to as the Plaintiffs. The defendants, Gilbert and Judy Osburn, will be referred to as the Defendants. The defendants, Louis and Annabelle Fundis, will be referred to as the Sellers. The other named defendants are irrelevant to this appeal and will not be mentioned.

The Sellers originally owned a large tract of land in Baldwin City. On November 13, 1964, they executed a warranty deed to Tri-In-Co., Inc. (hereinafter referred to as Tri-In-Co), a development corporation, conveying to Tri-In-Co some thirty-five acres of land. Tri-In-Co purchased the land for the purpose of subdividing it into small residential lots.

The Sellers' house, located on acreage which they did not sell, was immediately to the south of the property line between the land they retained and the land they sold to Tri-In-Co. It was so close, in fact, that their driveway was actually on land owned by Tri-In-Co.

To avoid the necessity of constructing a new driveway, the Sellers made a reservation of a driveway easement over Tri-In-Co's land in the November 13, 1964, warranty deed. The precise language used to reserve the easement is important to the case. It is set out below:

"[W]ith the delivery of this deed, party of the second part hereby grants to parties of the first part an easement of access across the following described land: [description of the property]. *Said easement shall not run with the land, but shall exist only as long as the property to the South of the conveyed tract is owned by the first parties.* If party of the second part decides to dedicate the area on which said easement is granted as a street or roadway, said power to dedicate shall be paramount to first parties' easement rights." (Emphasis supplied.)

The next significant event that occurred was the filing of a plat showing the layout of the proposed subdivision. The plat was filed on December 10, 1965. It showed the tract divided into thirty-six lots. Roadways, streets and utility easements were shown. So was the Sellers' driveway easement. A short text, printed on the plat, recited the dedication of the streets and roads

and the grant of a utility easement to Baldwin City and public utility companies. The plat showed the front building lines for each lot, as permitted by Baldwin's zoning restrictions, with an explanation of the zoning requirements in the text. Two driveway easements were shown—the one in question and one running across lot 16 to lot 15, which had no street frontage. The text of the plat contained no mention of either easement.

On March 7, 1966, a quitclaim deed from the Sellers to Tri-In-Co was filed. The quitclaim deed covers the same property conveyed in the 1964 warranty deed. The quitclaim deed contains a statement that it was executed for the purpose of correcting the legal description of the 1964 warranty deed.

On April 26, 1973, the Plaintiffs purchased their lot by warranty deed from an individual who had bought it from Tri-In-Co. The deed contained this description of the lot:

"Lot Thirty-six (36) in Trail Side, an Addition to Baldwin City, *as shown by the recorded plat thereof,* in Douglas County, Kansas." (Emphasis supplied.)

Insofar as the record shows, only one plat was ever filed—the one filed in 1965, which did in fact show the easement.

On September 15, 1974, Sellers conveyed a tract of land to the Defendants. The conveyed tract was the Sellers' original home place. The contract of sale acknowledged that there might be problems concerning the Defendants' use of the driveway easement, although the Sellers stated that they believed that the driveway easement was now a public one. The Defendants purchased the land on a fifteen year contract, so legal title remained with the Sellers. Other pertinent provisions of the contract will be discussed later.

On August 11, 1975, the Plaintiffs filed suit to quiet title. They requested that the court declare the encumbrance on their land, created by the driveway easement, terminated. The Defendants filed a K.S.A. 60-212(*b*)(6) motion to dismiss, basing the motion primarily on two premises: (1) the Sellers still had legal title and the Plaintiffs' action was therefore premature until legal title to the land passed to the Defendants; and (2) the private easement created by the warranty deed was superseded and made permanent by the plat, which indisputably showed the easement. The Plaintiffs' answer to this motion to dismiss raised yet another issue, besides denying the two mentioned above: the 1966 quitclaim deed, which made no mention of the easement, effected a termination of the easement.

After trial of the matter, the district court filed a journal entry containing the following points which are pertinent to this appeal: (1) the 1966 correctional quitclaim deed did not extinguish the easement; (2) the Sellers are still the legal owners of the land, and so long as they hold legal title, the easement exists; (3) the plat did not create a public easement; and (4) since the Sellers still own legal title to the land, the Plaintiffs' action to quiet title was premature.

The parties do not agree on the issues. A reading of both of the briefs shows that the following issues are raised. (1) Are Sellers still the "owners" of the tract purchased by the Defendants within the meaning of the reserving clause in the warranty deed by which the Sellers conveyed the land to the Plaintiffs' predecessors in interest? (2) What is the legal effect of the recorded plat, which shows the easement held by the Defendants? (3) What is the effect of the quitclaim deed filed in 1966, which was given and recorded for the stated purpose of correcting the legal description and which makes no mention of the reservation of the easement? (4) Which of these issues are properly reviewable by this court?

This court will first consider the question of whether the Sellers are still "owners" of the lot purchased by the Defendants within the meaning of the clause creating the easement. In effect, the Sellers made a reservation of an easement appurtenant to their own land in the 1964 warranty deed which they executed in favor of the Plaintiffs' predecessors in interest. This is permissible, especially since the reservation was made to preserve an existing way. See 25 Am. Jur. 2d, Easements and Licenses § 21. The reserving clause specifically stated that the easement would not run with the land; the servitude would cease to exist when the dominant tenement was no longer owned by the Sellers.

The question of whether the Defendants are entitled to use the driveway easement by virtue of the 1964 easement reservation is clearly dependent on the meaning of the phrase "owned by the first parties," for by the terms of the deed the easement is to last only so long as the dominant tenement is owned by the first parties (the Sellers). To answer this question, we must examine the terms under which the Defendants purchased their land from the Sellers. Briefly stated, the terms of the contract under which

the Defendants purchased the dominant tenement from the Sellers are as follows: (1) a down payment of $5,000 was required, with the balance to be paid in equal monthly installments over a period of fifteen years; (2) the Sellers were required to execute a warranty deed which was deposited with an escrow agent who was to deliver it to the Defendants for filing upon payment of the entire purchase price; (3) in event of default, the contract was to be forfeited, the Sellers were entitled to immediate possession of the property, and the Sellers were entitled to keep all amounts paid under the contract as liquidated damages; (4) the Defendants were responsible for paying taxes and insurance premiums; (5) the Defendants were granted full possession of the property, with the right to make any desired improvements, subject to certain limitations designed to protect the Sellers from being unduly burdened by liens on the property; (6) both the Sellers and the Defendants had the right to assign their rights under the contract, provided they gave fourteen days' notice to the other parties of their intention to do so.

The trial court was correct in ruling that legal title remained with the Sellers under the contract. The executed warranty deed signed by the Sellers was placed in escrow. Placing a deed in escrow necessarily imposes certain conditions which must be met before delivery of the deed may be made. 28 Am. Jur. 2d, Escrow § 5. In this case, the conditions were full and complete payment of the consideration required by the contract. No *legal title* passes to the grantee until all of the conditions are performed and the deed is released from escrow. 28 Am. Jur. 2d, Escrow § 10. However, the Defendants clearly have acquired substantial property interests in the realty, even though they do not have legal title. They have the right to possession and use, the right to assign their interest, and they have the duty to pay taxes and insurance premiums on the property. Essentially, they own all property rights except legal title. Since the property rights in the land have been split, we do not think that the answer to the question of who is the "owner" can be simply answered by pinpointing who holds legal title.

The solution to the problems presented in this appeal appears to lie in the exact nature of the property interest held by each party to the executory contract. Specifically, exactly what is the nature of the Sellers' "ownership," and is it sufficient to keep the easement across the servient tenement in existence?

No Kansas cases that are clearly dispositive of the issue have been located. In *Moore v. Moore,* 93 Kan. 697, 150 Pac. 230 (1915), it was held that the delivery of a deed into escrow was not in and of itself determinative of whether title passed. The court said that the *intention* of the parties, a question of fact, was the deciding factor. The court said, "The intention is a question of fact to be determined from the entire transaction. The writings should be construed by the court, and other evidence considered and weighed." 93 Kan. at 701. In *Moore,* the delivery of a deed into escrow was held not to operate to pass title to the grantee because the evidence showed that the grantor intended that title should vest in the grantee after the grantor's death only if the grantee had complied with certain conditions. Since the grantee had failed to fulfill those conditions, it was determined that title never passed to him.

Other Kansas cases which have held that title did not pass to the grantee upon the placement of the deed in escrow include *Business Blocks Co. v. Gregory,* 102 Kan. 33, 169 Pac. 191 (1917); *Pomeroy v. Insurance Co.,* 86 Kan. 214, 120 Pac. 344 (1912); and *Baker v. Snavely,* 84 Kan. 179, 114 Pac. 370 (1911).

However, there are also Kansas cases that hold that the conveyance should date from the day that the deed was delivered into escrow, not the date that all of the escrow conditions were satisfied. Those cases include *Hill v. Miller,* 84 Kan. 196, 113 Pac. 1043 (1911); and *Davis v. Clark,* 58 Kan. 100, 48 Pac. 563 (1897). In one case, *Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690 (1907), it was held that the grantor passed legal title to the grantee upon delivery of the deed into escrow, but kept possession and enjoyment of the property until his death. In that case the court chose not to view the conditions imposed upon the grantee as a condition precedent to the vesting of legal title; rather, it was said that title vested in the grantee upon placing the deed in escrow, subject to reversion to the grantor upon condition subsequent (*i.e.,* non-performance of conditions by the grantee).

In those cases where it was held that title passed when the deed was placed in escrow, the doctrine of relation back was used to accomplish this effect. The key to the different treatment accorded to the various cases is found in *Baker v. Snavely,* 84 Kan. at 183, where it is said:

"Whether a deed executed and placed in escrow relates back to the time of the contract and execution thereof, so as to vest the grantee with the full title from that time, or whether it becomes such conveyance only upon the full performance of the conditions, seems to depend upon which of the two theories will promote justice under all the circumstances of the individual case."

A more recent Kansas case relating to the subject is *Wilson v. Woolverton,* 137 Kan. 663, 21 P.2d 313 (1933), which cites *Baker v. Snavely* with approval. Another case, *Torluemke v. Abernathey,* 174 Kan. 668, 258 P.2d 282 (1953), holds that purchasers under an executory contract could not rescind the agreement after the date that they took possession of the property. They took possession, purchasing on contract with an escrow arrangement, on July 1, 1951. The July 11, 1951, flood diminished the value of the property and their desire to own it. The court adopted the "equitable rule," holding that risk should pass to the purchasers upon possession. In reaching this decision, the court quoted from Williston on Contracts:

"The intention of the parties is the factor in any proper decision. Parties do not frequently make express provisions as to risk, but they do indicate whether they intend a present transfer of the rights of ownership or a future transfer, and there should be no doubt that they expect all the incidents of ownership to pass from the seller to the buyer at that time. That time will frequently not be when the legal title is transferred. If, as frequently happens, a purchaser is given immediate possession under his contract, with the right to use the property as his own to the same extent as is customary with a mortgagor, the title is retained merely as security for payment of the price. It is a short way and in many states a common way of accomplishing the same end that would be achieved by conveying to the purchaser and taking back a mortgage. *When by the contract the beneficial incidents of ownership are to pass is the time which the parties must regard as the moment of transfer. This is the time when the purchaser is held to become the 'owner,'* under alienation clauses in insurance policies, and no little authority supports the conclusion that then, and not before, the risk passes to the vendee." *Torluemke,* 174 Kan. at 671. (Emphasis supplied.)

There are several cases from other jurisdictions that distinguish between equitable and legal ownership. In *County of Los Angeles v. Butcher,* 155 Cal. App. 2d 744, 318 P.2d 838 (1957), it was said:

"From the foregoing authorities it is clear that where parties enter into a written contract for the purchase and sale of real property pursuant to which the buyer goes into possession and the seller retains the legal title as security for the purchase price, the latter 'has no greater rights than he would possess if he had conveyed the land and taken back a mortgage' and the purchaser 'is for all purposes the owner.' [Citations omitted.]" p. 747.

In *Hartman v. Hartman,* 11 Ill. App. 3d 524, 297 N.E.2d 199 (1973), the same principle was announced and followed when the court said:

"Under the doctrine of equitable conversion upon the execution of a valid, enforceable contract for the sale of realty, the purchaser becomes the equitable owner of the realty holding the purchase money as trustee for the seller. The seller becomes trustee of the legal title for the purchaser with a lien on the land as security for the purchase money." pp. 527-528.

A few of the cases from other jurisdictions where this concept has been applied include: *Davis v. Rio Rancho Estates, Inc.,* 401 F. Supp. 1045 (S.D. N.Y. 1975); *United States v. Giwosky,* 349 F. Supp. 1200 (E.D. Wis. 1972); *Shreeve v. Greer,* 65 Ariz. 35, 173 P.2d 641 (1946); *Trickey v. Zumwalt,* 83 N.M. 278, 491 P.2d 166 (1971); *Reynolds Aluminum v. Multnomah Co.,* 206 Or. 602, 287 P.2d 921 (1955); *Jakober v. Loew's Theatre, Etc.,* 107 R.I. 104, 265 A.2d 429 (1970); *Committee v. Val Vue Sewer Dist.,* 14 Wash. App. 838, 545 P.2d 42 (1976). The United States Supreme Court has applied the same principle in holding that realty sold on contract by the United States to private individuals or corporations is subject to state and local taxation. *S.R.A., Inc. v. Minnesota,* 327 U.S. 558, 90 L.Ed. 851, 66 S.Ct. 749 (1946); *New Brunswick v. United States,* 276 U.S. 547, 72 L.Ed. 693, 48 S.Ct. 371 (1928). See also 91 C.J.S., Vendor & Purchaser § 106.

Applying this concept to the case at hand, we find that the trial court erred in determining that the Sellers were still the "owners" of the dominant tenement within the meaning of the clause reserving the easement. Clearly, the Sellers' ownership is limited to the ownership of legal title, and since that puts them in the same position as a mortgagee, with none of the rights, benefits, duties or risks of beneficial ownership, it should not operate to continue the easement beyond the date that the executory contract between the Sellers and the Defendants became effective to vest possession in the Defendants.

Our holding that the reservation of the easement made in the 1964 warranty deed to Tri-In-Co is not effective to continue the easement beyond the time that the Sellers conveyed their property by executory contract to the Defendants is supported by sound policy reasons. First, it avoids the absurd situation of making the existence of the easement depend on the type of financing the Defendants chose. It also avoids the incongruous

result of giving the Defendants greater beneficial use (*i.e.,* full use of their own land, plus use of the easement) during the period that they have the lesser legal interest. Finally, it would mean that the easement, which is a function of the *use* of the property, is linked with the beneficial use, rather than the intangible concept of legal title.

We next consider the effect of the recorded plat, which shows the driveway easement over the Plaintiffs' land. The original conveyance, containing the reservation of the easement, was made in 1964. In 1965, Tri-In-Co filed a plat, showing how it proposed to subdivide the acreage it purchased. Streets were shown, along with utility easements. The easement over the Plaintiffs' land was shown, though the plat contained no explanation of what it would be used for. The original deed reserving the easement stated that Tri-In-Co could, if it so chose, dedicate a public way where the private easement was located and its right to do so would be paramount to the Sellers' right to use the private easement. The easement shown by the plat, however, was not a public way in any sense, for it leads directly to the Defendants' garage and no further.

On appeal, the Defendants contend that the fact that the easement was shown on the 1965 plat, and the fact that the Plaintiffs' deed conveyed to them lot 36 "as shown by the recorded plat," taken together, operate to make the easement permanent.

Two of the cases cited by the Defendants in support of this contention hold that a grantee whose deed refers to a plat acquires an easement for streets and public ways shown by the plat. *Griffith v. C & E Builders,* 231 Ga. 255, 200 S.E.2d 874 (1973); *Armiger v. Lewin,* 216 Md. 470, 141 A.2d 151 (1957). Other recent cases to the same effect include *McPhillips v. Brodbeck,* 289 Ala. 148, 266 So. 2d 592 (1972); *Norcross v. Adams,* 263 Cal. App. 2d 362, 69 Cal. Rptr. 429 (1968); *Epps v. Freeman,* 261 S.C. 375, 200 S.E.2d 235 (1973). A Texas case holds that a deed referring to a plat showing streets creates a private easement for the grantee and the private easement survives the abandonment of the street as a public right-of-way by the city. *Hicks v. City of Houston,* 524 S.W.2d 539 (Tex. Civ. App. 1975).

However, the above cited cases are all distinguishable from the one at hand because they involve plat reference to a *public* right-of-way rather than a purely private one, such as this case involves.

Two fairly recent Massachusetts cases are more nearly on point than those cited above. In those cases, it was held that when land is conveyed with reference to a plan or plat, an easement (other than an easement by necessity) is created *only if so intended* by the parties to the deeds. *Scagel v. Jones,* 355 Mass. 208, 243 N.E.2d 908 (1969); *Rahilly v. Addison,* 350 Mass. 660, 216 N.E.2d 414 (1966). The case relied upon by the Defendants, *Jeffery v. Lathrup,* 363 Mich. 15, 108 N.W.2d 827 (1961), which states "[A]n easement recorded on a subdivision plat by reference to which subdivision sales are made is binding" (pp. 21-22), fits within this class. The *Jeffery* case involved a drainage easement without which the house on the dominant tenement would have a perpetually flooded basement. Consideration of the 1964 deed in conjunction with the 1965 plat would indicate that the parties did not intend to create a permanent easement by the plat, for the 1964 deed created a clear time limitation on the existence of the easement.

The practice of referring to a plat in order to describe property which is being deeded is discussed at 23 Am. Jur. 2d, Deeds § 232, p. 274:

"Such a reference to another instrument for description of the subject matter has the effect of incorporating such instrument into the description so that that which is described will pass. When reference is made to a map or other document as describing the land, the description appearing in such map or document is made a part of the deed as fully and effectually as if copied therein, provided the deed and the document of reference together yield such description as would have been sufficient if set forth entirely in the deed."

In 23 Am. Jur. 2d, Deeds § 233, it is noted that the plat does not even have to be recorded in order to be effectively incorporated into a description. It would appear that even though a plat may be incorporated by reference into a deed for descriptive purposes, its effect is limited to being a descriptive tool. The plat itself does not convey. Thus, a grantee under a deed referring to a plat would not be justified in looking only to the plat: he would have to consider the plat in conjunction with other deeds and documents comprising the chain of title. The Plaintiffs in this case would have to look at their deed and the plat, but would also have to look beyond these to the deed which conveyed the parcel they now own to their predecessor in interest, Tri-In-Co. That deed clearly limits the existence of the easement to the time period during

which the Sellers own the land to the south of the Plaintiffs' lot. The Plaintiffs would be justified in believing that the easement shown on the plat would cease to exist upon the Sellers' conveyance of the land to the south of their tract.

An old Kansas case, *Fitzpatrick v. Crowther,* 100 Kan. 355, 164 Pac. 300 (1917), examined the effect of a deed which conveyed city lots "according to the recorded plat thereof." The plat showed the lots to be 150' x 1220'. The lots in reality measured 134.8' x 1105'. The plaintiffs wished to abate the purchase price of the lots in order to compensate for their smaller footage. In ruling that the plaintiffs were not entitled to an abatement, the court recognized that reference to a plat has the effect of incorporating it into a deed. However, the court refused to hold that the grantor guaranteed the accuracy of measurements contained in the plat, stating instead, "[T]he reference is for the purpose of *identifying the property,* and for that purpose alone the other deed or plat is considered as incorporated in the instrument." 100 Kan. at 360, emphasis added. This case supports our holding that the plat does not operate to make permanent an easement which, when created, was subject to defeasance upon the conveyance of the dominant tenement.

It should be noted that in all of the cases upon which the Defendants rely in support of their position, the parties asserting the existence of the easement had purchased their property by a deed referring to the plat. In the case at hand, the parties asserting the easement (the Defendants) did not purchase with reference to a plat. Thus, they did not in any way rely upon the plat when they purchased their property.

Our decision that the Sellers are no longer the "owners" of the land renders the quitclaim issue moot; therefore, it will not be considered by this court.

The judgment of the trial court is reversed and the case is remanded with directions to quiet the Plaintiffs' title.