In re William Victor HUNTZINGER and Beverly Ann Huntzinger, Debtors.

William H. Griffin, Standing Chapter 13 Trustee, Plaintiffs,

v.

Security State Bank, Defendant.

Bankruptcy No. 98–23754–13–JTF. Adversary No. 99–6101.

United States Bankruptcy Court, D. Kansas.

Dec. 14, 2000.

Mark J. Lazzo, Klenda, Mitchell, Austerman and Zuercher, L.L.C., Wichita, KS, for debtors.

Martin J. Peck, Wellington, KS, for defendant.

William H. Griffin, Topeka, KS, Standing Chapter 13 Trustee, pro se.

## MEMORANDUM [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

William H. Griffin, the Standing Chapter 13 Trustee, alleges he can avoid Security State Bank's security interest in a contract for deed on real property. The debtors, Beverly A. and William V. Huntzinger, granted the security interest in their sellers' interest in the contract. Mr. Griffin relies on his status as a hypothetical lien creditor under § 544(a)(1). The court finds for the trustee because the bank failed to perfect its security interest.

### Findings of Fact

William and Beverly Huntzinger sold real estate in Wellington, Kansas, to Lois Harper in October 1985 under a contract for deed.[2] The purchase price was $41,000 payable in monthly installments over 20 years. Security State Bank was named escrow agent to receive Lois Harper's installment payments and to hold the deed until completion of the contract, at which time the bank was to deliver the deed to Harper and account to the parties.[3]

---

1. Debtors/plaintiffs appear by their attorney, Mark J. Lazzo of Klenda, Mitchell, Austerman and Zuercher, L.L.C., Wichita, Kansas. Defendant Security State Bank appears by its attorney, Martin J. Peck, Wellington, Kansas. William H. Griffin, the Standing Chapter 13 Trustee, appears pro se.

2. Lois Harper later became Lois Linville. Although she is referred to as Lois Linville in the Final Pretrial Conference Order filed March 13, 2000 (Doc. # 20), this opinion will refer to her as Lois Harper.

3. To ease the minds of lawyers who are asking themselves at this point whether Lois Har-

Eight years later, on June 18, 1993, the Huntzingers, in need of funds, mortgaged their interest in the Harper contract to Security State Bank. The mortgage described the property as follows: "Lot 4, Block 7, Fairmount Addition to the City of Wellington, Sumner County, Kansas, according to the recorded Plat thereof."[4]

Six days later, on June 24, the Huntzingers signed a $30,000 promissory note payable to Security State Bank. The note contained language granting a security interest in collateral referred to as follows: "Property described in Real Estate Mortgage(s) dated 6–18–93."[5]

That same day, June 24, the Huntzingers assigned their interest in the proceeds of the Harper contract to Security State Bank. The assignment granted "my interest in the proceeds of the sale of my installment sales contract ... as security for a loan in the amount of $30,-000.00...."[6]

Although the assignment was intended to create a security interest in the proceeds of the Harper contract for deed, the bank failed to file a UCC–1 financing statement perfecting the security interest. Rather, the next day, June 25, 1993, the bank recorded the Huntzinger mortgage of June 18 with the Register of Deeds of Sumner County, Kansas.

Five years later, on December 24, 1998, William and Beverly Huntzinger filed this Chapter 13 bankruptcy case. In their schedules, they listed the Harper contract as personal property and Security State Bank as the holder of a lien on the proceeds of the contract.

As the bankruptcy case progressed, Lois Harper continued to make postpetition contract payments to Security State Bank. Those payments total $3,568.05. The bank presently holds the funds in escrow.

In September 1999, the Huntzingers received court approval to sell their interest in the Harper contract.[7] Security State Bank agreed to the sale subject to its alleged lien being transferred to the sale proceeds and the lien's validity being reserved for later determination. The sale resulted in $21,512.13 for the Huntzingers' interest. The title company that handled the sale, Rogers Abstract and Title Company, presently holds those funds.

This adversary complaint to avoid the bank's security interest was initially filed by the Huntzingers. The bank, however, objected to their standing to prosecute the action. Attempting to cure this defect, the trustee ratified the Huntzingers' action, whereupon the bank withdrew its objection and the parties submitted the dispute for decision. Nevertheless, the court ruled that the Huntzingers had no standing to prosecute the action;[8] only the trustee

---

per recorded the mortgage or filed a statement of equitable interest: No, she did not. This fact, however, is immaterial to the issues in this case.

4. Real Estate Mortgage attached as Exhibit C to Final Pretrial Conference Order filed March 13, 2000 (Doc. # 20).

5. Promissory Note attached as Exhibit B to Final Pretrial Conference Order filed March 13, 2000 (Doc. # 20).

6. Assignment attached as Exhibit D to Final Pretrial Conference Order filed March 13, 2000 (Doc. # 20).

7. Stipulated Order on Security State Bank's Partial Objection to Debtors' Notice of Intended Sale filed September 21, 1999 in the debtors' main bankruptcy case (Doc. # 23 in Case No. 98–23754).

8. The Huntzingers did not argue that § 522(h) gave them standing, perhaps because they could not have successfully claimed their interest in the contract for deed as exempt property.

could file the complaint under § 544.[9] Since that ruling, the trustee has moved for and has been granted permission to intervene as the party plaintiff.[10]

The trustee seeks an accounting for and turnover of the $21,512.13 held by the title company and of the $3,568.05 held in escrow by Security State Bank.

### Conclusions of Law

■ State law determines the property rights of the parties under the contract for deed.[11] Those rights were established in the 1979 Kansas Court of Appeals decision of *Roberts v. Osburn* [12] and its progeny.[13]

■ Simply stated, *Roberts* and those cases relying upon it hold that the buyer under a Kansas contract for deed takes possession of the land and assumes all incidents of beneficial ownership. That ownership is of real property that the buyer can mortgage. The seller retains legal title to the real estate as security for the purchase price, but has no greater interest in the land than if he or she had conveyed title to the buyer and taken back a mortgage on the property. The seller has no right of ownership in the land; rather, the seller retains only the right to receive the payments agreed upon in the contract. Those payments are personal property, which the seller can encumber by granting a security interest under the Kansas Uniform Commercial Code.[14]

### The Assignment

■ The Assignment of the Huntzingers' contract rights, dated the same day as the promissory note, recited that it assigned their interest in the contract for deed to the bank as security for the $30,000.00 promissory note. The Huntzingers obviously intended the Assignment to grant the bank a security interest in their contract rights.

Those contract rights are collateral classified by K.S.A. § 84–9–106 as general intangibles. This statute defines general intangibles by contrasting them with accounts.[15] Under the statute an *account* is a right to payment for *goods or services not evidenced by an instrument or chattel paper.* This same statute defines general

---

9. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), *aff'g In re Hen House Interstate, Inc.,* 177 F.3d 719 (8th Cir. 1999).

10. Order of November 7, 2000, substituting William H. Griffin, trustee, for the debtors as party plaintiff in this adversary action (Doc. # 33).

11. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

12. *Roberts v. Osburn,* 3 Kan.App.2d 90, 589 P.2d 985 (1979) (finding buyer under Kansas contract for deed on real property becomes the equitable owner of the realty while seller retains legal title as security for the purchase price and is in position of a mortgagee with none of the risks of beneficial ownership).

13. *E.g., Garnett State Savings Bank v. Tush,* 232 Kan. 447, 657 P.2d 508 (1983); *Graham v. Claypool,* 26 Kan.App.2d 94, 978 P.2d 298 (1999); *In the Matter of Application of Small Business Administration,* 14 Kan.App.2d 600, 797 P.2d 879 (1990); *Bennett v. Galindo,* No. 94–1101–PFK, 1994 WL 613429 (D.Kan. Oct. 24, 1994); *Crough v. Scheets,* Civ. A. No. 92–1146–FGT, 1994 WL 409628 (D.Kan. July 14, 1994); *Nazar, Trustee v. Southern (In re Southern),* 32 B.R. 761 (Bankr.D.Kan.1983); *Southwest Nat'l Bank v. Southworth (In re Southworth),* 22 B.R. 376 (Bankr.D.Kan. 1982).

14. See cases at footnote 13.

15. K.S.A. § 84–9–106 (1996).

intangibles as personal property *other than those goods or accounts* (and other items not relevant here).

The official Kansas Comment to the statute confirms that the Huntzingers' sellers' interest in the contract for deed constitutes an intangible.

> Any right to payment that is not for goods sold or leased or services rendered or to be rendered is not an account. If the underlying transaction is a sale of realty, ... the right to payment would not be an account but some other intangible....
>
> The term *"general intangibles"* continues to be a catch-all to pick up collateral which does not fit any other Article 9 category.... It would include ... a vendor's interest in an installment land contract.... [16]

To perfect its security interest in a general intangible, Security State Bank was required by K.S.A. § 84–9–401(1)(c) to file a financing statement with the Office of the Secretary of State.[17] But the bank admittedly failed to do so. Consequently, its security interest is unperfected.

K.S.A. § 84–9–301(1)(b) subordinates an unperfected security interest to the rights of a person who is a "lien creditor" on the collateral.[18] Subsection (3) of that same statute defines a "lien creditor" to be "a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes ... a trustee in bankruptcy from the date of the filing of the petition ...." [19]

In turn, Bankruptcy Code § 544(a)(1) gives a trustee the rights and powers, as of the date of the petition, of "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains ... a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien ...." [20] This is a grant of hypothetical status "without regard to any knowledge of the trustee or of any creditor." [21] The trustee's status under this Code section permits him to avoid a transfer that is subject to the rights of a judicial lien creditor.[22]

Under state law, the bank's unperfected security interest is subordinate to the rights of a judicial lien creditor. This means that the creditor's lien displaces or avoids the bank's lien. The trustee, who occupies the status of a hypothetical judicial lien creditor, can likewise avoid the bank's lien. Consequently, the Huntzingers' grant of a security interest to Security State Bank is a prepetition transfer avoidable by the trustee under § 544(a)(1).

**The Mortgage**

■ Finally, the bank claims that because it holds a recorded mortgage, it has a perfected security interest in the Huntzingers' contract rights. It is true that the bank holds a recorded mortgage describing the land sold under the contract for deed. Not only does the bank hold a properly recorded mortgage describing the Harper real estate, but also the Huntzingers were the record title holders of the land when they signed the mortgage to Security State Bank. Nevertheless, under Kansas law, the equitable ownership of the real estate had passed to Lois Harper with

---

**16.** Official Kansas Comment to K.S.A. § 84–9–106 (1996) (emphasis added).

**17.** K.S.A. § 84–9–401(1)(c) (1996).

**18.** K.S.A. § 84–9–301(1)(b) (1996).

**19.** K.S.A. § 84–9–301(3) (1996).

**20.** 11 U.S.C. § 544(a)(1) (1998).

**21.** 11 U.S.C. § 544(a) (1998).

**22.** 11 U.S.C. § 544(a)(1) (1998).

the contract. This being the case, only Lois Harper could have encumbered the land by mortgaging it to the bank, which of course she did not do.

Not being the equitable owners of the land, the Huntzingers owned only a personal property interest in the contract for deed—a right to receive installment payments of the purchase price. This personal property interest could not be encumbered by a real estate mortgage granted by the Huntzingers since they were not the equitable owners of the land.

### Conclusion

Section 550 empowers the trustee to recover the value of transfers avoided under § 544. The bank and the title company are therefore ordered to turn over to the trustee forthwith the funds they hold that were derived from the Harper contract for deed.

**IT IS SO ORDERED.**