**In re Telechia Marie WHITE, Debtor.**

**Telechia Marie White, Plaintiff,**

v.

**Centex Home Equity Company, L.L.C. n/k/a Nationstar Mortgage, L.L.C., Defendant/Third–Party Plaintiff,**

v.

**Netco, Inc., Third–Party Defendant.**

**Bankruptcy No. 01–23966.
Adversary No. 02–06021.**

United States Bankruptcy Court,
D. Kansas.

Feb. 9, 2007.

Kenneth M. Gay, Lenexa, KS, for Plaintiff.

Brandon T. Pittenger, Timothy A. McNearney, McNearney & Associates, LLC, Overland Park, KS, Chris M. Troppito, Troppito & Miller, LLC, Kansas City, MO, for Defendant/Third–Party Plaintiff.

Craig M. Eoff, Davis Eoff and Elliott LLC, Akron, OH, Lance T. Weber, Kansas City, MO, for Third–Party Defendant.

## JUDGMENT ON COMPLAINT TO ENFORCE THE TRUTH–IN–LENDING ACT

ROBERT D. BERGER, Bankruptcy Judge.

After a trial on January 30, 2007,[1] the Court is prepared to rule on Debtor/Plaintiff's adversary complaint (Doc. No. 1) alleging violations under the Truth–in–Lending Act ("TILA")[2] against defendant Centex.[3] The Court has jurisdiction to

1. Debtor appears by her attorney, Kenneth M. Gay, Lenexa, Kansas. Defendant/Third–Party Plaintiff Centex Home Equity Company, L.L.C., now known as Nationstar Mortgage, L.L.C. ("Centex"), appears by its attorneys, Brandon T. Pittenger and Julie A. Haverly of McNearney & Associates, L.L.C., Overland Park, Kansas. Third–Party Defendant Netco, Inc. appears by its attorney, Lance T. Weber

of Weber, Pickett & Gale, L.L.C., Kansas City, Missouri.

2. 15 U.S.C. § 1601 *et seq.;* and Regulation Z, 12 C.F.R. Part 226 (2003).

3. Centex recently changed its name to Nationstar Mortgage, L.L.C., but the Court will continue to refer to it by the name in the caption. Centex filed a third-party adversary complaint against Defendant Netco alleging

hear this matter.[4] Based upon the facts and arguments presented as well as pertinent legal authority, the Court hereby enters the following findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052.

## Background

On December 8, 1998, Debtor executed a contract for deed to acquire a home (the "Residence") as her principal dwelling. As is customary under Kansas law, Debtor did not take legal title to the Residence under the contract for deed. In 2000, Debtor desired to pay off the contract for deed and applied to refinance with Centex. On July 26, 2000, Debtor and Centex entered into a consumer credit transaction secured by a mortgage on the Residence. Centex loaned Debtor $41,300.00 with a 15.55% interest rate (the loan and mortgage are referred to as the "Loan"). Centex closed the Loan and paid off the contract for deed but failed to ensure legal title of the newly encumbered Residence was transferred to Debtor.

Debtor claims Centex violated the TILA by failing to provide her with a statement of material TILA disclosures and by failing to provide her with the requisite number of copies of the notice to rescind. Debtor alleges she had a continuing right to rescind the Loan for up to three years from the date of the transaction because of Centex's violations. On or about December 14, 2001, Debtor, through her attorney, sent a letter to Centex advising Centex she was rescinding the Loan. Centex denies Debtor had a continuing right to rescind and also denies it failed to provide the required notices and disclosures. Netco, Inc., closed the Loan, although there were individuals from both Centex and Netco at the closing. Centex argues that in the event that it is found to have violated the TILA, Centex has a damage claim against Netco as the closing agent. Centex has filed a third-party complaint against Netco for these damages. Much of the trial was consumed with Centex and Netco blaming each other for any TILA violations that were proved by Plaintiff.

Debtor filed for Chapter 13 protection on December 17, 2001, and subsequently commenced this adversary proceeding seeking a determination that she properly rescinded the Loan and that, as a result, Centex no longer had an enforceable mortgage on her Residence. In addition, the complaint seeks statutory damages, costs, and reasonable attorney's fees.

## Findings of Fact

1. Debtor provided very credible testimony that (a) Centex provided her with a folder of Loan documents at closing; (b) Debtor maintained the folder undisturbed in a secure location where she stored other legal documents; and (c) Debtor transported the Loan document folder intact to her counsel who identified a key notice to rescind and disclosure statement were not included in the packet.

2. Although Debtor conceded she signed an acknowledgment stating she received all required documents at closing, Debtor's uncontroverted testimony rebutted the presumption of such receipt. Debtor was the only individual present at the Loan closing who testified at trial. Neither Centex nor Netco presented any evidence

---

breach of contract, negligence, and indemnity because Netco closed the subject real estate loan. This Judgment does not address the third-party complaint.

4. The parties do not dispute the Court's jurisdiction. The Court finds it has jurisdiction over this proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157.

contradicting Debtor's first-hand account of the events at or after closing. Centex did not offer any other plausible explanation for the missing documents.

3. Centex did not provide Debtor with two notices of her right to rescind the credit transaction, and Centex did not provide Debtor with a statement of material disclosures.

4. Debtor proved herself to be an earnest but unsophisticated borrower, the type of borrower whom the TILA was enacted to protect. The Loan was her first mortgage transaction, and Debtor did not understand that under the contract for deed, she did not hold legal title to the Residence, but held an equitable interest under the contract for deed (land installment contract). She depended on Centex to properly close the transaction.

5. The evidence clearly proved the Loan was in the nature of a refinance of a primary residence and not an acquisition loan. The Debtor so testified, and the loan documents indicated Centex's understanding that the Loan was to refinance Debtor's Residence.

6. While not germane to the Court's conclusions of law, the Court finds the overall conduct of the closing was sloppy given the manner in which the Debtor was provided the documents and given the undisputed fact that Centex closed the Loan without ensuring legal title to the Residence was vested in Debtor's name. The evidence showed the Loan was closed while the Residence was titled in another party's name who was not the mortgagor/Debtor. The title discrepancy was not cleared until a year after the Loan date. This undisputed evidence bolsters Debtor's testimony that Centex was not sufficiently focused on key details involving Debtor's rights.

7. The Debtor suffered damages as a result of Centex's failure to properly ensure the Residence was titled in Debtor's name before funding the Loan and placing a first priority lien on real property legally titled to an individual other than the Debtor. The Residence fell into some disrepair as a result of the cloud on the title and Debtor's understandable reluctance to spend money on a house she feared she did not own.

8. Pursuant to the refinancing transaction with Centex, the principal due on the mortgage note was $41,300, with interest accruing thereon at the rate of 15.550 percent per annum. The principal and interest payment was calculated as $523.87 per month. Additional escrow charges for real estate taxes and hazard insurance associated with the Residence were added to this payment. Amortization of the amount due was based upon a 30-year term, but the Loan ballooned after 15 years. The Debtor's Uniform Residential Loan Application indicated that her gross monthly income was $1,558. The application reflects that the purpose of the Loan was to refinance the Debtor's obligation on her primary residence. The application indicates that the Debtor was unmarried. The Loan closed on July 26, 2000.

9. After making her first payment, the Debtor discovered that the Residence was not legally titled in her name. Debtor at that juncture

stopped making payments to Centex because she did not want to make payments on a home that she did not believe she owned. On the date of trial, Centex's Exhibit B indicated that Debtor owed the following:

| | |
|---|---|
| Unpaid Principal | $ 41,294.75 |
| Interest Due | 41,178.55 |
| (From 9/01/00 to 1/30/07 at 15.550%) | |
| Late Charges of | 1,643.12 |
| Deferred Late Charges | 21.62 |
| Corporate Advance | 19,286.77 |
| | |
| Balance Due By 1/30/07 | $103,424.81 |

10. The end result is that less than seven years after the Loan closed, Centex's position is that the Debtor owes, above and beyond the unpaid principal, in excess of $60,000 (this sum is $20,000 more than the original amount the Debtor borrowed).

## Conclusions of Law

1. The TILA regulates disclosure of the terms of consumer credit transactions in order "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual cost of financing."[5] To encourage compliance, TILA violations are measured by a strict liability standard, so even minor or technical violations impose liability on the creditor.[6] The consumer-borrower can prevail in a TILA suit without showing that she suffered any actual damage as a result of the creditor's violation.[7]

2. Centex violated the TILA. First, Centex provided Debtor only one copy of the notice of the right to rescind in violation of TILA Regulation Z § 226.23, which requires a creditor to provide a debtor with two copies of the notice. Second, Centex failed to provide a statement of material disclosures required by TILA § 1635(h) and Regulation Z § 226.23(b)(2).

3. Debtor had an extended period of three years to rescind the Loan, and Debtor timely provided Centex with notice of her intention to rescind. Under the TILA, the borrower is entitled to a right to rescind the transaction for three days so long as the lender gives the borrower the disclosures required by the TILA and two copies of the notice of the right to rescind. However, the right to rescind lasts up to three years if the lender fails to give the borrower the disclosures and notice.[8]

4. Under Kansas law, the Debtor had a sufficient equitable ownership interest in the Residence arising from the contract for deed to establish the Loan was a refinancing loan and not an acquisition loan.[9]

---

5. *Morris v. Lomas & Nettleton Co.*, 708 F.Supp. 1198, 1203 (D.Kan.1989) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363–69, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)).

6. *See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of [the TILA and Reg. Z] be absolutely complied with and strictly enforced.").

7. *Herrera v. First N. Savings & Loan Ass'n*, 805 F.2d 896, 900 (10th Cir.1986).

8. 15 U.S.C. §§ 1635(a) and (f), § 1638, and Regulation Z, 12 C.F.R. §§ 226.17 and 226.18.

9. *In re Huntzinger*, 268 B.R. 263, 266 (Bankr. D.Kan.2000) (citing *Roberts v. Osburn*, 3 Kan. App.2d 90, 589 P.2d 985 (1979)). *See also* Official Staff Commentary 226.2(a)(24)–5, which states that "The term [acquisition] does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title."

5. Debtor is entitled to rescind the Loan. As a consequence of such rescission, Debtor is not liable for any finance or other charge.

6. Pursuant to TILA § 1635(b), voiding Centex's mortgage on Debtor's Residence is a remedy this Court may equitably condition to effect rescission.[10] In this case, the equities weigh heavily in Debtor's favor. Accordingly, Centex shall be required to release its mortgage on the Residence conditioned upon Debtor's tender of the Loan proceeds. However, the Loan is hereby reduced to a principal amount of $20,000, and any and all accrued interest and finance charges are abated (the "Equitable Loan"). No further interest, charges or fees will accrue on the Equitable Loan. The reduction in principal addresses the damages caused by Centex's failure to properly close the Loan. The Equitable Loan amount will be reduced further by the amounts included in the award of statutory damages, fees and costs as more fully below set forth.

7. Debtor is hereby approved to seek refinancing of the Equitable Loan pursuant to 11 U.S.C. § 364 or to sell the Residence pursuant to 11 U.S.C. § 363; the proceeds of same are exempt. The payoff of the Equitable Loan, as established in this Judgment and in any subsequent order approving Mr. Gay's fees, costs and expenses, shall be in complete and full satisfaction of any and all obligations that the Debtor may have or had to Centex. It is this Court's intent that this Judgment, as further supplemented by an award of Mr. Gay's attorney's fees, shall constitute a final and binding payoff figure with regard to Centex's mortgage and underlying note.

8. The parties are directed to comply with this directive within one year of the date of this Judgment.

9. Pursuant to TILA § 1640(a)(2)(A)(iii), Debtor is entitled to an award of statutory damages for Centex's failure to honor her notice of rescission. The Court finds Debtor is entitled to the statutory maximum award of $2,000.

10. Pursuant to TILA § 1640(a)(3), Debtor is entitled to recover the costs of this action together with reasonable attorney's fees. The Court reserves judgment on an award of attorney's fees and costs until it reviews Debtor's counsel's fee application. Mr. Kenneth Gay shall file a fee application and serve a redacted statement for services upon Centex and Netco within 20 days from the date of this Judgment. Centex and Netco shall have 10 days to object to the amount of fees. The Court shall make a final fee award based upon Mr. Gay's fee application and any objections it receives. The Court reserves the right to include any other costs after a review of Mr. Gay's fee application. Centex shall pay Debtor's attorney's fees directly to Mr.

---

10. *See, e.g., Yamamoto v. Bank of New York,* 329 F.3d 1167 (9th Cir.2003), *cert. denied,* 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004); *Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1140–42 (11th Cir.1992); *FDIC v. Hughes Dev. Co.,* 938 F.2d 889, 890 (8th Cir.1991), *cert. denied,* 502 U.S. 1099, 112 S.Ct. 1183, 117 L.Ed.2d 426 (1992). In the Tenth Circuit, *see, e.g., Quenzer v. Advanta Mortgage Corp. (In re Quenzer),* 288 B.R. 884 (D.Kan.2003); *In re Webster,* 300 B.R. 787 (Bankr.W.D.Okla.2003) (concluding courts do have equitable discretion to condition rescission under the TILA).

Gay, which amount shall be credited against the Equitable Loan.[11]

11. To the extent these Conclusions of Law contain any items which more appropriately should be considered a finding of fact, or vice versa, such items are incorporated as such by this reference.

## Conclusion

For the reasons set forth above, the Court concludes Centex violated the TILA. As a result, Debtor is entitled to rescind the Loan subject to the equitable conditions ordered herein, to statutory damages, and to attorney's fees and costs. The findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52 were stated orally and recorded in open court and constitute the grounds for the Court's action, in addition to the paraphrased findings set out in this Judgment. Statements made on the record are hereby incorporated pursuant to Fed. R. Bankr.P. 7052. A supplemental order shall be entered awarding attorney's fees and costs.

The relief described hereinbelow is SO ORDERED.

---

11. By way of illustration only, if Mr. Gay's fees are $10,000, then Centex shall pay Mr. Gay $10,000 directly, and the principal amount of the Equitable Loan shall be reduced to $10,000. The current payoff of the Equitable Loan is $18,000 prior to reduction for Mr. Gay's fees.